# United States Court of Appeals
## For the Eighth Circuit

———————————————

No. 12-2129

———————————————

Carlyn M. Johnson

*Plaintiff - Appellant*

v.

Securitas Security Services USA, Inc.

*Defendant - Appellee*

——————————

Appeal from United States District Court
for the Eastern District of Missouri - St. Louis

——————————

Submitted: January 15, 2014
Filed: October 7, 2014

——————————

Before RILEY, Chief Judge, WOLLMAN, LOKEN, MURPHY, BYE, MELLOY, SMITH, COLLOTON, GRUENDER, BENTON, SHEPHERD, and KELLY, Circuit Judges, En Banc.

——————————

BYE, Circuit Judge, with whom RILEY, Chief Judge, WOLLMAN, LOKEN, MURPHY, COLLOTON, GRUENDER, BENTON, and SHEPHERD, Circuit Judges, join, concurring.

After being fired from his position with Securitas Security Services USA, Inc. (Securitas) at the age of seventy-six, Carlyn Johnson filed this age discrimination

claim under the Age Discrimination in Employment Act (ADEA), 29 U.S.C. §§ 621-634. The district court[1] granted summary judgment in favor of Securitas, concluding Johnson had not submitted sufficient evidence to raise questions of material fact regarding a necessary element of a prima facie case of age discrimination. Johnson now appeals. We affirm.

I

Johnson has worked as a security guard since the late 1990s. In 2003, when the security firm then employing Johnson was bought out by Securitas, Johnson applied to and was hired by Securitas. Johnson was seventy at the time. At Securitas, Johnson worked as a utility security officer. In this role, he did not have a regular schedule, post, or manager but was instead offered shifts by various Securitas managers when they needed someone to fill in for security guards at the sites for which each was responsible.

Johnson's work history with Securitas was generally positive. He had a reputation for being dependable and never refusing an offered shift, even when accepting required Johnson to work multiple consecutive shifts. Robert Hesse, one of Securitas's field service managers, took to referring to Johnson by the nickname "Superman" at least in part to reflect Johnson's dependability.

Hesse, however, had concerns about Johnson's ability to work long hours and multiple consecutive shifts. Hesse talked to other Securitas field service managers on multiple occasions, recommending against scheduling Johnson for shifts which would cause him to work more than forty hours in a given week. On several occasions, Hesse compared Johnson to Hesse's retired father who, Hesse claimed, tried to take

---

[1]The Honorable Rodney W. Sippel, United States District Judge for the Eastern District of Missouri.

-2-

on work beyond his capabilities. On other occasions, Hesse also commented to both Johnson and Johnson's wife that Johnson was "too old" to be working and it was "time to hang up [Johnson's] Superman cape and retire."

One of Securitas's clients in 2009 was Rail Logistics. Rail Logistics contracted with Securitas for a security guard to patrol its site during two regular weekend shifts, from 4:00 p.m. Saturdays to 8:00 a.m. Sundays, and from 4:00 p.m. Sundays to 6:00 a.m. Mondays. In the weeks leading up to the incident for which he was fired, Johnson worked several shifts at Rail Logistics, some ending at 8:00 a.m. and some ending at 6:00 a.m. The week before the shift for which he was fired, Johnson worked the Saturday night to Sunday morning shift at Rail Logistics, which ended at 8:00 a.m.

Shortly after 5:30 a.m. on the morning of Sunday, January 25, 2009, while Johnson was working a shift at the Rail Logistics site, the Securitas vehicle in which Johnson was patrolling collided with a stationary semi-trailer. The collision damaged the Securitas vehicle. Securitas has a policy which requires its employees to report vehicle accidents as soon as possible. Securitas guards did not, however, have access to a phone at the Rail Logistics site and Securitas had not provided Johnson with a cell phone or radio. As a result, Johnson attempted to use his own cell phone to report the collision to Securitas. Despite several tries, however, Johnson's cell phone was unable to get a strong enough signal to connect to the Securitas office.

Johnson remained on the site until approximately 7:00 a.m., whereupon he left it to drive the damaged vehicle back to the Securitas office. Along the way, he stopped to use his cell phone in another attempt to report the collision. At 7:02 a.m., Johnson reached Charlie Bunch, the Securitas field service manager on duty. Johnson reported the collision and told Bunch the Rail Logistics shift was over and he was on his way back to the Securitas office. Bunch, who was new to the shift and unfamiliar with the time at which the Rail Logistics shift ended, told Johnson to drop off the

Securitas vehicle and go home, indicating to Johnson he would call Johnson back to the office if needed. Johnson did so.

Bunch went to the Securitas parking lot to assess the damage to the vehicle Johnson had been driving. Bunch then began preparing an accident report, initially indicating Johnson's shift had ended at 7:00 a.m. Shortly after 8:00 a.m., Bunch called Hesse, the manager responsible for the Rail Logistics account, to inform him of the accident. Hesse informed Bunch the Rail Logistics shift had been supposed to end at 8:00 a.m. instead of 7:00 a.m. Bunch changed the notation in his accident report accordingly. After the call to Hesse, Bunch called Johnson back to the office to take a blood test pursuant to Securitas policy.[2] Johnson complied. Bunch then called Sherri Parker, Securitas's human resources manager for the region, to inform her of the accident and Johnson's possible early unauthorized departure from the Rail Logistics site. The Securitas Security Officer Handbook lists unauthorized departure from a job site as an offense for which Securitas may immediately terminate an employee. The following morning, as part of the human resources investigation, Parker conversed with both Hesse and Bunch about the incident. Parker originally made notes of these conversations as a matter of personal habit, but destroyed the notes sometime after Johnson was fired.

On Wednesday, January 28, 2009, Hesse called Johnson and told him to expect a call from Parker. During this call, Hesse again commented to Johnson it was "time to hang up [his] Superman cape and retire." Shortly thereafter, Parker called Johnson. During the call, she asked Johnson if he had been born in 1932. Parker then informed Johnson his employment with Securitas had been terminated and asked him to come to the Securitas office to answer questions about the accident. Johnson responded, saying he would not return to the office as he had been fired. Parker then obtained

_____

[2]Securitas also requires employees who have been in an accident to participate in its resulting investigation, which Securitas requires commence within four hours of the accident in order to capture evanescent evidence such as blood-alcohol content.

Johnson's answers to her questions over the phone. Securitas did not hire anyone to replace Johnson.

In the months which followed, Johnson filed several complaints with Securitas's in-house hotline, claiming his firing had been the result of mistake and age discrimination. Johnson ultimately filed this suit. After discovery, Securitas moved for summary judgment. The district court granted the motion, concluding Johnson had failed to raise genuine questions of material fact regarding a necessary element of a prima facie case of age discrimination. The district court also held, in the alternative, Johnson had failed to submit sufficient evidence to raise a genuine question of material fact regarding whether Securitas's stated reasons for terminating Johnson had been pretext for age discrimination.

Johnson appealed, arguing the district court erred by granting Securitas summary judgment. A divided panel of this court reversed. The full court subsequently granted Securitas's petition for rehearing en banc.

II

On appeal, Johnson contends the district court erred in granting Securitas summary judgment, offering a number of arguments he has submitted sufficient evidence to raise genuine questions of material fact regarding each of the elements of his age discrimination claim.[3] We review a grant of summary judgment de novo and may affirm the judgment of the district court on any basis supported by the record. Hohn v. BNSF Ry. Co., 707 F.3d 995, 1000 (8th Cir. 2013) (citing St. Martin v. City of St. Paul, 680 F.3d 1027, 1032 (8th Cir. 2012)). Like the district court, we give the

---

[3]Johnson also argues the district court failed to view the evidence in the light most favorable to him as the non-moving party. We agree there are some instances in which the district court viewed conflicting evidence in a light more favorable to Securitas. The facts viewed in the light most favorable to Johnson are listed above.

nonmoving party the benefit of all reasonable inferences which may be drawn without resorting to speculation. Chappell v. Bilco Co., 675 F.3d 1110, 1114 (8th Cir. 2012) (citations omitted).

Employment discrimination claims in cases where, as here, there is no direct evidence of discrimination, are considered under the burden shifting analysis set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). Gibson v. Am. Greetings Corp., 670 F.3d 844, 855 (8th Cir.), cert. denied, 133 S. Ct. 313 (2012). Under this framework, a plaintiff must first establish a prima facie case of age discrimination, which, if sufficiently alleged, creates a presumption the employer engaged in unlawful discrimination. Ridout v. JBS USA, LLC, 716 F.3d 1079, 1083 (8th Cir. 2013) (citations omitted). Establishing a prima facie case also shifts the burden to the employer to articulate a legitimate, nondiscriminatory reason for its actions. Id. If the employer carries its burden, the presumption is eliminated and the burden shifts back to the employee, who must then prove the employer's asserted reason was merely pretext for discrimination. Id. To survive summary judgment, an employee must both discredit the employer's articulated reason and demonstrate the "circumstances permit a reasonable inference of discriminatory animus." Gibson, 670 F.3d at 856 (quoting Haigh v. Gelita USA, Inc., 632 F.3d 464, 470 (8th Cir. 2011)). An employee's attempt to prove pretext requires more substantial evidence of discrimination than required to make a prima facie case because we view this evidence in light of the reasons articulated by the employer. Jones v. United Parcel Serv., Inc., 461 F.3d 982, 992 (8th Cir. 2006) (citing Sprenger v. Fed. Home Loan Bank of Des Moines, 253 F.3d 1106, 1111 (8th Cir. 2001)). Ultimately, the employee must show that age was the "but-for" cause of the adverse employment action. Haigh, 632 F.3d at 468.

Assuming for the sake of argument Johnson has sufficiently alleged a prima facie case of age discrimination, we conclude he has failed to introduce sufficient evidence to raise a genuine question of material fact regarding the third phase of the

McDonnell Douglas analysis. In this case, Securitas has articulated legitimate, nondiscriminatory reasons for terminating Johnson's employment, namely Johnson's early unauthorized departure from the Rail Logistics site and delay in reporting his accident there. Accordingly, to survive summary judgment, Johnson must have submitted sufficient evidence to raise genuine questions of material fact whether Securitas's articulated reasons were merely pretext for age discrimination.

Johnson offers a number of arguments to support his position the evidence he submitted is sufficient to survive Securitas's summary judgment motion. Johnson points to (1) his assertion he did not leave the site early; (2) Hesse's age-related comments; (3) Parker's knowledge of Johnson's age; (4) Securitas's disparate treatment of Johnson; (5) Securitas's shifting explanations for terminating Johnson's employment; (6) Parker's spoliation of evidence; and (7) the record as a whole.

Early departure. Johnson first contends there is a question of fact whether he actually left the Rail Logistics site early. In support, Johnson points to evidence indicating he may not have left the Rail Logistics site until after 7:00 a.m. and that Bunch initially acknowledged the shift ended at 7:00. Although the exact time Johnson left the site is relevant, the question it raises here is not material. "Our precedent establishes that the 'critical inquiry in discrimination cases like this one is not whether the employee actually engaged in the conduct for which he was terminated, but whether the employer in good faith believed that the employee was guilty of the conduct justifying discharge.'" Pulczinski v. Trinity Structural Towers, Inc., 691 F.3d 996, 1002 (8th Cir. 2012) (quoting McCullough v. Univ. of Ark. for Med. Scis., 559 F.3d 855, 861-62 (8th Cir. 2009)). The record indicates Securitas relied on internal documents, including the time sheets of officers who had worked the pertinent Rail Logistics shift and its contract with Rail Logistics, when determining whether Johnson left the Rail Logistics site early. Those documents indicate the end time for the pertinent shift was 8:00 a.m. Nothing in the record creates a question

whether the decision makers had a good faith belief Johnson had left his post early by leaving the site before 8:00 a.m.

Hesse's comments. The sole evidence of age animus in the record consists of Hesse's age-related comments. Johnson links those comments to his termination on the basis of Securitas's answer to an interrogatory indicating Hesse was one of three people who together made the decision to terminate his employment. In essence, Johnson asks the court to infer Hesse prevailed on Bunch and Parker to take advantage of Johnson's early unauthorized departure from the Rail Logistics site and delay in reporting the accident to fire Johnson because of his age. Because Hesse had previously discussed Johnson's age with other Securitas managers, it would be reasonable to infer Hesse spoke to Bunch and Parker about Johnson's age. Under the relatively minimal threshold required to establish a prima facie case, this could raise a question whether age was a factor in Johnson's termination.

At the pretext stage, however, we must view the evidence of pretext in light of the legitimate, nondiscriminatory reasons articulated by Securitas. Jones, 461 F.3d at 992. In this light, Hesse was but one of three people making the decision to terminate Johnson's employment, each of whom believed Johnson had engaged in at least one terminable offense by leaving the Rail Logistics site early without authorization to do so. Even viewing the evidence in the light most favorable to Johnson, the court would be required to speculate to assume Hesse prevailed on Parker and Bunch to take advantage of the terminable offense to fire Johnson because of his age. Accordingly, the evidence of Hesse's comments is not sufficient to raise genuine questions of material fact regarding whether Securitas's stated reasons were pretext or whether age was the "but-for" reason for Johnson's termination.

Parker. Johnson also points to Parker being aware of his age when she informed him his employment had been terminated. Similar to Hesse's history of making age-related comments, Parker's awareness of Johnson's age would merit a

reasonable inference Hesse had discussed Johnson's age with her after the incident. As we have noted, under the relatively minimal threshold necessary to establish a prima facie case this could be sufficient to raise a question of fact whether age was a factor in Johnson's determination. Viewing the evidence in light of Securitas's articulated reasons for terminating Johnson's employment, however, Parker's mere awareness of Johnson's age is not sufficient to raise genuine questions of material fact with regards to whether Securitas's reasons were pretext or whether age was the "but-for" reason for Johnson's termination.

Disparate treatment. The record indicates Securitas has not fired any other employee for the reasons it fired Johnson. Johnson argues this merits an inference he was, therefore, treated differently from other similarly situated employees. On this record, however, the inference is unreasonable. At the pretext stage, the test for whether someone is sufficiently similarly situated, as to be of use for comparison, is rigorous. See Bone v. G4S Youth Servs., LLC, 686 F.3d 948, 956 (8th Cir. 2012), cert. denied, 133 S. Ct. 1252 (2013). "[Johnson] must show that [he] and the employees outside of [his] protected group were 'similarly situated in all relevant respects.'" Id. (quoting Rodgers v. U.S. Bank, N.A., 417 F.3d 845, 853 (8th Cir. 2005)). "[I]ndividuals used for comparison must have dealt with the same supervisor, have been subject to the same standards, and engaged in the same conduct without any mitigating or distinguishing circumstances." Id. (quoting Clark v. Runyon, 218 F.3d 915, 918 (8th Cir. 2000)). To make the inference Johnson asserts reasonable, Johnson would need evidence of a younger Securitas employee who engaged in the same conduct as Johnson, i.e., an unauthorized departure from a job site coinciding with a failure to report a vehicle accident in a timely manner, but who received more lenient discipline. Johnson points to no such evidence. Accordingly, the mere fact Securitas has not fired any other employee for the reasons it fired Johnson does not on this record raise a genuine question of material fact regarding whether Johnson was treated differently than other employees.

Changing rationales. Johnson next contends he has raised a genuine question of material fact whether Securitas's articulated reasons were pretext, arguing Securitas has repeatedly changed the reasons it has given for his termination. "A change in an employer's legitimate, nondiscriminatory reason for firing an employee is probative of pretext only if the discrepancy is 'substantial.'" Id. at 957 (citing Twiggs v. Selig, 679 F.3d 990, 994 (8th Cir. 2012)). The changes in the rationales asserted by Securitas are, however, not substantial. Throughout the course of Johnson's pursuit of his claim, Securitas has maintained the primary reason it terminated Johnson was his early unauthorized departure from the job site, with the secondary reason being Johnson's delay in reporting the accident. As Johnson has pursued his claim, various Securitas employees have occasionally articulated additional reasons for Johnson's termination. When doing so, however, the employees did not deviate from the reasons originally articulated by Securitas. Further, the additional asserted reasons have generally been alternate ways of stating the original reasons offered by Securitas. See Elam v. Regions Fin. Corp., 601 F.3d 873, 881 (8th Cir. 2010) (noting an employer may elaborate on its proffered explanation for an adverse employment action). The changes pointed to by Johnson are not substantial enough to be probative of whether Securitas's articulated reasons for terminating his employment are pretext.

Spoliation. Johnson next contends he was entitled to an inference that Parker's destroyed personal notes contained information favorable to his position, arguing the district court should have considered the contents of the notes sufficient evidence to survive summary judgment. "We review for abuse of discretion the district court's decision whether to draw an adverse inference based on destruction of evidence." Johnson v. Ready Mixed Concrete Co., 424 F.3d 806, 811 (8th Cir. 2005) (citing Stevenson v. Union Pac. R.R. Co., 354 F.3d 739, 745 (8th Cir. 2004)). An adverse inference from the destruction of evidence arises only when the destruction is intentional and indicates a desire to suppress the truth. Stevenson, 354 F.3d at 746 (citations omitted). Johnson presented no evidence that Parker engaged in intentional destruction with a desire to suppress the truth. His argument, accordingly, fails.

Record as a whole.  At the last, Johnson contends the record as a whole contains questions of material fact sufficient for him to survive Securitas's summary judgment motion.  We disagree.  For the reasons we have already discussed, the separate aspects of the record Johnson focuses on in his specific arguments do not raise genuine questions of material fact regarding whether Securitas's asserted reasons for terminating him were pretext or whether age was the "but-for" reason for his termination.  Johnson's argument regarding the record as a whole is merely an amalgamation of the arguments we have already found unavailing.

For the foregoing reasons, the district court did not err in granting Securitas summary judgment.

### III

The judgment of the district court is affirmed.

SMITH, Circuit Judge, with whom MELLOY and KELLY, Circuit Judges, join, concurring in part and dissenting in part.

I concur in the majority's reasoning to the extent that it concludes that Carlyn Johnson submitted sufficient evidence to raise genuine issues of material fact about each element of a prima facie case of age discrimination. I also agree that Securitas articulated legitimate, nondiscriminatory reasons for terminating Johnson's employment. But, unlike the majority, I find that Johnson has "adduce[d] enough admissible evidence to raise genuine doubt as to the legitimacy of [Securitas's] motive, even if that evidence did not directly contradict or disprove [Securitas's] articulated reasons for its actions." Davenport v. Riverview Gardens Sch. Dist., 30 F.3d 940, 945 n.8 (8th Cir. 1994) (citation omitted). Because "genuine issue[s] of material fact concerning pretext" exist, summary judgment is an inappropriate disposition. Hase v. Mo. Div. of Emp't Sec., 972 F.2d 893, 896 (8th Cir. 1992). Accordingly, I respectfully dissent from the majority's decision to affirm the decision of the district court.

"'Summary judgment is proper if, after viewing the evidence and drawing all reasonable inferences in the light most favorable to the nonmovant, no genuine issues of material fact exist and the movant is entitled to judgment as a matter of law.'" Johnson v. Carroll, 658 F.3d 819, 825 (8th Cir. 2011) (quoting Hayek v. City of St. Paul, 488 F.3d 1049, 1054 (8th Cir. 2007)). "A dispute about a material fact is genuine if the evidence is such that a reasonable trier of fact could return a decision in favor of the party opposing summary judgment." Commercial Union Ins. Co. v. Schmidt, 967 F.2d 270, 272 (8th Cir. 1992) (citing Anderson v. Liberty Lobby, 477 U.S. 242, 248 (1986)).We review a district court's grant of summary judgment de novo. Carroll, 658 F.3d at 825.

> Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, whether he is ruling on a motion for summary judgment or for a directed verdict. The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor.

Anderson, 477 U.S. at 255 (citation omitted).

Because Securitas put forth a legitimate, nondiscriminatory reason for terminating Johnson's employment, Johnson must demonstrate "'that [Securitas's] proffered explanation is pretextual or his claims will fail.'" Anderson v. Durham D&M, L.L.C., 606 F.3d 513, 521 (8th Cir. 2010) (quoting Humphries v. Pulaski Cnty. Special Sch. Dist., 580 F.3d 688, 692 (8th Cir. 2009)). Johnson satisfies this burden by producing "'enough admissible evidence to raise genuine doubt as to the legitimacy of [Securitas's] motive.'" Id. (quoting Sprenger, 253 F.3d at 1110). The majority compartmentalizes each of Johnson's arguments and then summarily dismisses Johnson's contention that the record as a whole contains questions of material fact sufficient for him to survive Securitas's summary judgment motion. In doing so, the majority has missed the proverbial forest for the trees.

Construing the facts in the light most favorable to Johnson—as we must—shows that Johnson has "adduce[d] enough admissible evidence to raise genuine doubt as to the legitimacy of [Securitas's] motive, even if that evidence did not directly contradict or disprove [Securitas's] articulated reasons for its actions." Davenport, 30 F.3d at 945 n.8 (citation omitted).

Hesse, Johnson's supervisor, told Johnson on several occasions over a three-year period that Johnson "needed to hang up his Superman cape." Johnson understood Hesse's comment to mean that Johnson "was worn out and . . . shouldn't be working." Hesse "also said [that Johnson] was too old to be working." On one occasion, when Johnson's wife called Hesse to advise him that her husband was in the hospital, Hesse commented that Johnson "should retire," "was 'too old' to continue working," and "'needed to hang up his Superman cape and retire.'"

Hesse also compared Johnson to Hesse's retired father, who was in his 80's at the time of Johnson's termination. Hesse told Johnson that Hesse's father "tried to work, do more than [he] could do." Hesse testified that he made the comparison to his father in response to Johnson's acceptance of more work as a utility officer with Securitas. Johnson testified that Hesse "always referenced to his own father who was 86 [and] had to quit [work], and now Bob [Hesse] had to take care of him. He said, 'You ought to do the same thing. Just drop everything.'"

Hesse admitted to telling field service managers, *including Bunch*, that Johnson "needed to hang up his cape" and that Johnson was "working past his limitations." Hesse also suggested to other managers that they "prevent [Johnson] from working 50, 60 hours a week." Johnson brought Hesse's comments to his supervisors' attention, including Hesse himself *and Bunch*.

Prior to Johnson's termination, Hesse called Johnson and told him that Hesse had talked with Parker. Hesse told Johnson "that [Hesse] thought [Johnson] should

-13-

hang up [his] cape and retire or go home." Hesse provided Johnson with Parker's telephone number, told Johnson that he had talked with Parker, and advised Johnson that Parker was going to call Johnson.

In a subsequent phone call with Parker, Johnson was terminated. In response to an interrogatory, Securitas stated that Parker, Bunch, *and* Hesse participated in the decision to terminate Johnson. Parker testified that she did not know how old Johnson was at the time of his termination. Johnson testified, however, that Parker *was* aware of his age and confirmed Johnson's birth year during the phone call when she terminated Johnson. Whether Parker knew Johnson's age at the time of his termination goes to Parker's *credibility*—a determination that a *jury*—not judge—must make. See Anderson, 477 U.S. at 255. If Parker's statement that she did not know Johnson's age at the time of termination is demonstrably *false*, then a reasonable factfinder could conclude that Johnson was not credible and draw a reasonable inference that Parker's motivation in agreeing to Johnson's termination was age related. See Hitt v. Harsco Corp., 356 F.3d 920, 923-24 (8th Cir. 2004) ("Like the district court, we give the non-moving party the benefit of reasonable inferences that may be drawn without resorting to speculation.").

In sum, construing the facts in the light most favorable to Johnson, the record shows that Hesse, Parker, and Bunch *collectively* decided to terminate Johnson's employment. Decisionmaker Hesse repeatedly made disparaging, age-related comments about Johnson, including telling Johnson just prior to his termination that he should "hang up [his] cape and retire or go home." A factfinder could reasonably conclude that decisionmaker Hesse sought to terminate Johnson because of his age.

As the majority admits, "Because Hesse had previously discussed Johnson's age with other Securitas managers, it would be reasonable to infer Hesse spoke to Bunch and Parker about Johnson's age." See Part II, supra. But the majority's analysis stops short. The ultimate question is not whether Hesse spoke to Bunch and Parker about

-14-

Johnson's age but what effect Hesse's *repeated, derogatory comments* about Johnson's age had on his fellow decisionmakers. Hesse made the disparaging, age-related comments to Johnson *and* other managers, including decisionmaker Bunch. Additionally, Hesse informed Johnson that he should retire shortly after speaking with decisionmaker Parker. Did Parker really not know Johnson's age at the time of his termination? How much did Hesse influence Bunch's and Parker's decision to terminate Johnson? On this record, these questions are for a jury to decide, not this court. See Anderson, 477 U.S. at 255.

Accordingly, I respectfully dissent from the majority's conclusion that genuine issues of material fact concerning pretext do not exist and would reverse the district court's grant of summary judgment in Securitas's favor.

_____