# United States Court of Appeals

## For the Eighth Circuit

_____

No. 16-3071

_____

Sam Edwards

*Plaintiff - Appellant*

v.

Hiland Roberts Dairy, Co.; Hiland Dairy Foods Company, L.L.C.

*Defendants - Appellees*

_____

No. 16-3075

_____

Zyeair Smith

*Plaintiff - Appellant*

v.

Hiland Roberts Dairy, Co.; Hiland Dairy Foods Company, L.L.C.

*Defendants - Appellees*

_____

Appeals from United States District Court
for the District of Nebraska - Omaha

_____

Submitted: May 11, 2017
Filed: June 27, 2017

_____

Before RILEY, BEAM, and SHEPHERD, Circuit Judges.

_____

RILEY, Circuit Judge.

Zyeair Smith and Sam Edwards, both African-American men, brought separate suits against Hiland Roberts Dairy, Co.,[1] and Hiland Dairy Foods Company, L.L.C. (collectively, Hiland Dairy), alleging race discrimination in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e, et seq., and the Nebraska Fair Employment Practice Act (NFEPA), Neb. Rev. Stat. §§ 48-1101, et seq. The district court[2] granted summary judgment to Hiland Dairy in both cases, finding Smith and Edwards failed to produce sufficient evidence to support their claims. We affirm.

## I.    BACKGROUND

Smith and Edwards were Hiland Dairy employees and worked at Hiland Dairy's facility in Omaha, Nebraska. Both worked as part of a sanitation crew, responsible for equipment maintenance between the facility's production cycles. On July 26, 2013, Smith, at Edwards's request, used Edwards's company-issued identification card to clock Edwards out after Edwards had left the facility, in violation of Hiland Dairy's timecard policies. Smith initially did not admit to clocking Edwards out, but later confessed when confronted with a video recording of the incident. Less than one week later, Hiland Dairy conducted an investigation and terminated Edwards's and Smith's employment, citing "theft of time" and dishonest conduct as reasons for termination.

_____

[1]The appellee has asserted this name is incorrect.

[2]The Honorable Lyle E. Strom, United States District Judge for the District of Nebraska.

Smith and Edwards filed charges of discrimination with the United States Equal Employment Opportunity Commission (EEOC) and the Omaha Human Rights and Relations Department (OHRRD). According to the complaints, the OHRRD found in each case "there was reasonable cause to believe that plaintiff's race was a motivating factor in his termination by the defendant" and set up conciliatory meetings on April 2, 2014. Hiland Dairy failed to attend the meetings, and the OHRRD determined the "conciliation failed and forwarded the charge to the EEOC." The EEOC issued a right to sue letter to each plaintiff on June 4, 2014. Smith and Edwards subsequently filed actions against Hiland Dairy, alleging unlawful termination in violation of federal and state law. See 42 U.S.C. § 2000e-2(a)(1) (prohibiting discriminatory employment practices on the basis of race); Neb. Rev. Stat. § 48-1104(1) (same).[3] In support of their employment discrimination claims, they alleged two similarly-situated white employees named in the complaints violated the same policies by leaving work without clocking out and falling asleep on the job, but were not terminated.

Hiland Dairy moved for summary judgment, which the district court granted in both cases. The district court concluded Smith and Edwards, without any direct evidence of race discrimination, both failed to demonstrate a prima facie case of employment discrimination. See McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973) (prima facie case absent direct evidence). The district court also concluded that even if Smith and Edwards had satisfied their prima facie cases, and the burden shifted back to Hiland Dairy to show a legitimate, nondiscriminatory reason for the terminations, Smith and Edwards had not provided sufficient evidence of pretext under the more rigorous standard. Smith and Edwards each appealed, and

---

[3]We analyze discrimination claims under the NFEPA by applying the same analysis for discrimination claims under Title VII. See Orr v. Wal-Mart Stores, Inc., 297 F.3d 720, 723 (8th Cir. 2002) ("In construing the NFEPA, Nebraska courts have looked to federal decisions, because the NFEPA is patterned after Title VII.").

-3-

we granted Hiland Dairy's unopposed motion to consolidate their appeals. See 28 U.S.C. § 1291 (appellate jurisdiction); Fed. R. App. P. 3(b)(2).

## II.     DISCUSSION

"'We review the district court's grant of summary judgment de novo, viewing the facts in the light most favorable to the nonmoving party and giving that party the benefit of all reasonable inferences that can be drawn from the record.'" Banks v. John Deere & Co., 829 F.3d 661, 665 (8th Cir. 2016) (quoting Minn. ex rel. N. Pac. Ctr., Inc. v. BNSF Ry. Co., 686 F.3d 567, 571 (8th Cir. 2012)). Summary judgment must be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). To prevent summary judgment, "[t]he nonmovant 'must do more than simply show that there is some metaphysical doubt as to the material facts,' and must come forward with 'specific facts showing that there is a genuine issue for trial.'" Torgerson v. City of Rochester, 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc) (quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986)).

Because Smith and Edwards did not produce direct evidence of discrimination, we apply the McDonnell Douglas burden-shifting framework. See Shirrell v. St. Francis Med. Ctr., 793 F.3d 881, 887 (8th Cir. 2015). Under the McDonnell Douglas framework, a plaintiff must first establish a prima facie case of race discrimination by showing "(1) he was a member of a protected group; (2) he was qualified to perform the job; (3) he suffered an adverse employment action; and (4) circumstances permit an inference of discrimination." Huynh v. U.S. Dep't of Transp., 794 F.3d 952, 958 (8th Cir. 2015). If a plaintiff "establishes a prima facie case, a presumption of discrimination arises and the burden shifts to [the employer] to present evidence of a 'legitimate, nondiscriminatory reason for' its adverse employment action." Banks, 829 F.3d at 666 (quoting McDonnell Douglas, 411 U.S. at 802). If the employer satisfies its burden, the presumption disappears and the plaintiff must

provide evidence demonstrating the employer's proffered nondiscriminatory reason is mere pretext for intentional discrimination. See id. We pass over the district court's finding that Smith and Edwards did not satisfy their prima facie cases and address the district court's second basis for its decision, insufficient evidence of pretext to defeat Hiland Dairy's legitimate reason for terminating Smith and Edwards.

Smith and Edwards concede Hiland Dairy satisfied its burden by articulating and presenting evidence of a legitimate and nondiscriminatory reason for firing them. Assuming Smith and Edwards could establish their prima facie cases, they could only survive summary judgment if they discredited Hiland Dairy's proffered nondiscriminatory reason by providing evidence that reason was pretext for a discriminatory motive. See Johnson v. Securitas Sec. Servs. USA, Inc., 769 F.3d 605, 611 (8th Cir. 2014) (en banc). "'A plaintiff may show pretext, among other ways, by showing that an employer (1) failed to follow its own policies, (2) treated similarly-situated employees in a disparate manner, or (3) shifted its explanation of the employment decision.'" Schaffhauser v. United Parcel Serv., Inc., 794 F.3d 899, 904 (8th Cir. 2015) (quoting Lake v. Yellow Transp., Inc., 596 F.3d 871, 874 (8th Cir. 2010)).

Smith and Edwards contend the circumstances of their terminations created an inference of discrimination because they were disciplined more severely than similarly-situated white employees, Bernie Turbes and Steve Rezac, for similar offenses. "At the pretext stage, the test for whether someone is sufficiently similarly situated, as to be of use for comparison, is rigorous." Johnson, 769 F.3d at 613. Smith and Edwards must establish they and the white employees are "'similarly situated in all relevant respects.'" Id. (quoting Bone v. G4S Youth Servs., LLC, 686 F.3d 948, 956 (8th Cir. 2012)). Additionally, the employees "'used for comparison must have dealt with the same supervisor, have been subject to the same standards, and engaged in the same conduct without any mitigating or distinguishing circumstances.'" Id. (quoting Bone, 686 F.3d at 956).

Although the employees here all had the same supervisors and were subject to the same employment standards, the district court found "the presence of mitigating and/or distinguishing circumstances" prevented the conclusion that Turbes and Rezac were similarly situated to Smith and Edwards. Smith and Edwards contend a reasonable jury could find Turbes's and Rezac's conduct "was of comparable seriousness." Smith was fired for using Edwards's identification card to clock Edwards out after Edwards had left the premises. Edwards was fired for directing Smith to clock him out after he had left the premises. According to Hiland Dairy, Smith's and Edwards's actions constituted "theft of time" and dishonest conduct in violation of Hiland Dairy's time card policy. By contrast, Turbes was only "written-up" for failing to clock out when he left the premises during his lunch hour. Turbes, however, was a lead quality-assurance foreman, and Hiland Dairy allowed employees in that position to stay on the clock during their lunch breaks if they were staying on the premises. When Turbes was confronted about the incident, he claimed he did not know he had to clock out during his lunch breaks if he left the facility. Rezac only received a written warning for sleeping on the job, and he was not terminated because he was a long-term employee and there was some doubt as to whether Rezac actually was sleeping. While each instance of compared misconduct involved a varying allegation of time theft, Hiland Dairy perceived Smith's and Edwards's violations, but not Turbes's and Rezac's, to involve dishonesty. And Smith and Edwards worked in concert to deceive Hiland Dairy. These reasons are significant and sufficient distinctions making the situations not similarly situated in all relevant respects, and they support the district court's conclusion.

Smith and Edwards next argue Hiland Dairy's investigation of their offenses was inconsistent with its policies and their collective-bargaining agreement. Although they observe Hiland Dairy "diligently gathered evidence" of their alleged misconduct, they assert Hiland Dairy's investigation was nonetheless incomplete because Hiland Dairy did not "look at Edwards's time card for the day" and determine whether Edwards was entitled to a break. Evidence showing an employer has failed

to follow its own policies may indicate pretext, yet "'[a]n employer can certainly choose how to run its business, including not to follow its own personnel policies regarding termination of an employee . . . as long as it does not unlawfully discriminate in doing so.'" Schaffhauser, 794 F.3d at 904 (quoting McCullough v. Univ. of Ark. for Med. Scis., 559 F.3d 855, 863 (8th Cir. 2009)). Hiland Dairy's disciplinary counseling process and the collective-bargaining agreement do not establish the scope of an investigation; they only require that an investigation occur before termination. Smith and Edwards have not offered evidence supporting their allegation that Hiland Dairy's investigation was incomplete. Even if the investigation were somehow flawed, a shortcoming in an internal investigation alone, without additional evidence of pretext, would not suffice to support an inference of discrimination on the part of the employer. See Barber v. C1 Truck Driver Training, LLC, 656 F.3d 782, 795 (8th Cir. 2011).

Smith and Edwards also suggest their supervisor articulated shifting explanations for why they were fired. "A change in an employer's legitimate, nondiscriminatory reason for firing an employee is probative of pretext only if the discrepancy is 'substantial.'" Bone, 686 F.3d at 957 (quoting Twiggs v. Selig, 679 F.3d 990, 994 (8th Cir. 2012)). Smith and Edwards contend their supervisor testified "time theft was part of the reason for [Edwards's] termination," and later stated "Edwards was terminated because he had Smith clock out for him." These statements neither conflict nor are substantially different because the reasons and explanations for these terminations are not actually different at all—Smith clocking Edwards out when Edwards already had left the premises.

Lastly, Smith and Edwards assert the district court erred by refusing to consider their exhibit containing the findings of the OHRRD. See Shanklin v. Fitzgerald, 397 F.3d 596, 602 (8th Cir. 2005) (standard of review). The district court summarily concluded the OHRRD findings did not satisfy Federal Rule of Civil Procedure 56, and it would "forgo consideration of any and all other exhibits not meeting Rule 56's

standard." See Stuart v. Gen. Motors Corp., 217 F.3d 621, 635 n.20 (8th Cir. 2000) ("To be considered on summary judgment, documents must be authenticated by and attached to an affidavit made on personal knowledge setting forth such facts as would be admissible in evidence or a deposition that meets the requirements of Fed. R. Civ. P. 56(e). Documents which do not meet those requirements cannot be considered."); see also Jones v. Nat'l Am. Univ., 608 F.3d 1039, 1045 (8th Cir. 2010) ("Federal Rule of Evidence 901(a) provides that the requirement of authentication is satisfied by 'evidence sufficient to support a finding that the matter in question is what its proponent claims.'" (quoting Fed. R. Evid. 901(a))). Smith and Edwards rely on Gannon International, Ltd. v. Blocker, 684 F.3d 785, 793 (8th Cir. 2012), which states "the standard is not whether the evidence at the summary judgment stage would be admissible at trial—it is whether it *could* be presented at trial in an admissible form." The issue in Gannon was whether a statement "partly based on hearsay" could be presented in admissible form at trial. Id. Here, the district court appears foremost concerned with the authenticity of the exhibit, because Smith and Edwards did not submit affidavits in support of the exhibit. Because Smith and Edwards failed to submit the exhibit in an admissible form for summary judgment, their argument on appeal misses the mark. We find no error.

## III.  CONCLUSION

We affirm the district court's grants of summary judgment.

_____