# United States Court of Appeals

## For the Eighth Circuit

_____

No. 18-1652

_____

Chris Williams, doing business as Cane Creek Sod

*Plaintiff - Appellant*

v.

Medalist Golf, Inc.

*Defendant - Appellee*

_____

Appeal from United States District Court
for the Eastern District of Missouri - Cape Girardeau

_____

Submitted: September 27, 2018
Filed: December 11, 2018

_____

Before WOLLMAN, KELLY, and ERICKSON, Circuit Judges.

_____

KELLY, Circuit Judge.

Chris Williams, doing business as Cane Creek Sod, appeals the district court's grant of summary judgment in favor of Medalist Golf, Inc. Upon careful consideration of the issues presented, we affirm the judgment of the district court.[1]

_____

[1]The Honorable Stephen N. Limbaugh, Jr., United States District Judge for the Eastern District of Missouri.

Williams operates Cane Creek, which supplies, grows, and delivers sod. Medalist specializes in building high-end golf courses. Medalist's project manager, Todd Tilton, sought sod bids for the Gary Player Designed Golf Course, which Medalist agreed to build at Big Cedar Lodge for Ozarks Golf and Hunt Club, LLC. When requesting a bid from Cane Creek, Tilton informed Mark Woodard, a Cane Creek employee, that the sod was for use on a "high-end golf course for a very important client." In December 2015, Medalist received bids from both Cane Creek and another company, Green Acre Sod Farm, for the Gary Player-designed golf course. Cane Creek submitted a bid to supply Meyer Zoysia sod at $0.3233 per square foot. After receiving Green Acre's December 2015 bid, Medalist discontinued its discussions with Green Acre.

In January 2016, Tilton wrote Woodard to say that Cane Creek was "in the driver's seat with regard to the [Meyer] Zoysia" sod, and that so long as Ozarks Golf's new director of agronomy approved of the sod, "then it look[ed] good for" Cane Creek. On February 16, Tilton wrote Woodard, saying: "We have finally gotten the word from [Ozarks Golf] and it is going to be Meyer [Zoysia]. I will send you an agreement this week. Don't sell it to anyone else." Tilton then drafted a document titled "Grass Supplier Agreement" (GSA), which he sent to Woodard on February 18, with a request to "[p]lease sign and send back to us for agreement execution." Tilton later testified that Medalist used these types of agreements "to reserve grasses" so that Medalist had enough sod for its projects and to "set[] the price."

On February 23 and 24, representatives for Medalist and Cane Creek signed the GSA. Under the document's title, the GSA states, "Job: Gary Player Designed Golf Course at Big Cedar Lodge." In relevant part, the GSA provides that Cane Creek "guarantees the quality and specification of the materials provided to"

Medalist.  In a section titled "Scope of Work," the GSA sets out a "Description of Materials to be provided," an "Estimated Quantity" of 914,760 square feet, and a "Unit Price" of $0.3233 per square foot.  The GSA further provides that "Estimated Quantities are a target and not a guaranteed amount," that Cane Creek "understands that golf courses may use more or less than estimated quantities based upon the direction of the golf course architects or owners of the project," and that Cane Creek "will hold unit prices for the duration of the project regardless of actual quantities delivered." Medalist did not make any payment to Cane Creek in connection with the GSA.  Williams testified that he understood the provision of the GSA stating that Cane Creek "guarantees the quality and specification of the materials provided" to mean that he "was guaranteeing that they were going to get Meyer Zoysia and that it would be the quality that satisfied the customer," and if the customer was not satisfied, then Cane Creek "would fix it."

Todd Bohn, director of agronomy for Big Cedar Lodge, also oversaw Ozarks Golf and was given authority to act on behalf of Ozarks Golf as it related to the construction of the Gary Player-designed golf course.  Bohn instructed Jeff Lezon, the superintendent of the project, to visit Cane Creek.  Around July 7, Woodard showed Lezon the 45-acre field of Meyer Zoysia from which Cane Creek planned to harvest sod for the project.  Lezon inspected and took photographs of the sod, sent the photographs to Bohn, and provided Bohn with his own feedback regarding the sod.  Bohn decided that the sod did not meet the quality standards for the Gary Player-designed golf course and instructed Medalist to reject it.  On July 11, Tilton wrote to Green Acre, and Green Acre agreed to supply the sod required for the project at $3.25 per square yard.  Green Acre supplied a total of 754,488 square feet of Meyer Zoysia sod for the golf course.

On July 14, Tilton wrote Woodard that Ozark Golf's representative had instructed Medalist to use a different source for the Meyer Zoysia sod in light of quality and contamination concerns.  Tilton informed Woodard that "[b]ecause of this

declaration by the owner you do not have to worry about meeting an obligation for any specific quantity for this project, so if you have another opportunity to sell this grass then you should avail yourself of that opportunity." Cane Creek then attempted to sell its Meyer Zoysia to others, and did sell some of it to another golf course, but was unable to sell all of the sod it had set aside for use in the Gary Player-designed golf course.

Williams brought suit against Medalist seeking damages for breach of contract and promissory estoppel. The district court granted summary judgment in favor of Medalist on both claims. Williams appeals.

## II

This court reviews the district court's grant of summary judgment de novo. See Dick v. Dickinson State Univ., 826 F.3d 1054, 1058 (8th Cir. 2016). "Summary judgment is proper only when 'there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" Id. (quoting Fed. R. Civ. P. 56(a)). "A fact is 'material' if it may affect the outcome of the lawsuit." TCF Nat'l Bank v. Mkt. Intelligence, Inc., 812 F.3d 701, 707 (8th Cir. 2016) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). "[W]e give the nonmoving party the benefit of all reasonable inferences which may be drawn without resorting to speculation." Johnson v. Securitas Sec. Servs. USA, Inc., 769 F.3d 605, 611 (8th Cir. 2014). On appeal, Williams challenges the district court's grant of summary judgment for Medalist on his breach of contract and promissory estoppel claims. We address each in turn.

## III

The parties agree that Missouri law governs this case. Under Missouri law, "[a] breach of contract action includes the following essential elements: (1) the

existence and terms of a contract; (2) that plaintiff performed or tendered performance pursuant to the contract; (3) breach of the contract by the defendant; and (4) damages suffered by the plaintiff." Keveney v. Mo. Military Acad., 304 S.W.3d 98, 104 (Mo. banc 2010).

First, Medalist argues that Williams cannot establish the existence of a contract. Because the GSA concerns the sale of goods, Article 2 of Missouri's Uniform Commercial Code governs. See LoRoad, LLC v. Glob. Expedition Vehicles, LLC, 787 F.3d 923, 927 (8th Cir. 2015). Under the UCC, a contract may exist even though it is missing terms so long as "there exists a reasonably certain basis for giving an appropriate remedy." Comput. Network, Ltd. v. Purcell Tire & Rubber Co., 747 S.W.2d 669, 676 (Mo. Ct. App. 1988). Ordinarily, a quantity term is essential to granting relief. See id. It is undisputed that the GSA does not contain a definite quantity amount, only an estimate. But the parties acknowledge that a requirements contract within the meaning of Mo. Ann. Stat. § 400.2–306(1) may contain quantity estimates and still be enforceable.

"'[E]xclusivity' is an essential element of any valid requirements contract." Essco Geometric v. Harvard Indus., 46 F.3d 718, 728 (8th Cir. 1995). In a requirements contract, "one party promises to supply all the specific goods or services which the other party may need during a certain period at an agreed price, and the other party promises that he will obtain his required goods or services from the first party *exclusively*." Id. (quoting Kirkwood-Easton Tire Co. v. St. Louis Cnty., 568 S.W.2d 267, 268 (Mo. banc. 1978)). It is "the legal detriment incurred by the buyer in relinquishing his right to purchase from all others except the seller" that provides "the requisite mutuality and consideration for a valid contract." Propane Indus., Inc. v. Gen. Motors Corp., 429 F. Supp. 214, 218 (W.D. Mo. 1977). The parties dispute whether Williams can establish that the parties intended to enter into an exclusive arrangement.

"[T]he UCC does not require certain particular words to enforce a requirements contract." Essco Geometric, 46 F.3d at 728. This court has applied Missouri law to uphold an oral requirements contract where extrinsic evidence of a prior course of dealing suggested that the parties intended an exclusivity arrangement. See Universal Power Sys., Inc. v. Godfather's Pizza, Inc., 818 F.2d 667, 671 (8th Cir. 1987). In another case, also applying Missouri law, we concluded that testimonial evidence bolstered the conclusion that parties intended exclusivity in a letter memorializing a commitment to provide requested goods for the "entire" project at issue. See Essco Geometric, 46 F.3d at 728. Here, Williams has adduced evidence suggesting that Medalist: (1) had a custom and practice of using GSAs to "reserve" sod needed for construction; (2) obtained only one GSA for the Gary Player-designed golf course; (3) discontinued its discussions with Green Acre after receiving its December 2015 bid and only restarted discussions after Bohn instructed Medalist to reject Cane Creek's sod; (4) instructed Cane Creek not to sell to anyone else; and (5) asked Cane Creek to sign and execute a GSA promising to "hold unit prices for the duration of the project." A jury could reasonably infer from these facts that Medalist intended to purchase Meyer Zoysia sod for the Gary Player-designed golf course exclusively from Cane Creek.

Medalist argues that because there was no prior course of dealing between the parties that could lead Williams to believe that there was some sort of exclusivity arrangement, no requirements contract exists. But the question is whether both parties intended an exclusive arrangement, not whether Cane Creek had a sufficient basis to believe that Medalist intended to purchase Meyer Zoysia sod exclusively from Cane Creek. We cannot conclude that no contract exists as a matter of law.

In the alternative, Medalist argues that Cane Creek's breach of contract claim fails as a matter of law because it tendered nonconforming goods. Under Mo. Ann. Stat. § 400.2–601, if goods tendered by a seller "fail in any respect to conform to the contract, the buyer may," among other things, "reject the whole." Goods are

conforming "when they are in accordance with the obligations under the contract." § 400.2–106(2). Additionally, under § 400.1–304, "[e]very contract or duty [governed by Missouri's UCC] imposes an obligation of good faith in its performance and enforcement."

The crux of Medalist's argument is that because Ozarks Golf determined that the quality of Cane Creek's sod was unacceptable for use in the Gary Player-designed golf course, there is no issue of material fact as to whether Williams tendered conforming goods. We agree that Williams is unable to show that there is a genuine dispute of material fact as to whether his Meyer Zoysia sod satisfied the quality requirements of the Gary Player-designed golf course. Williams testified that he understood he "was guaranteeing that they were going to get Meyer Zoysia and that it would be the quality that satisfied the customer." The GSA also states that Cane Creek "guarantees the quality and specification of the materials" it provides to Medalist and that the "Gary Player Designed Golf Course at Big Cedar Lodge" is the "Job." Williams does not claim that Bohn acted in bad faith when he determined that Cane Creek's Meyer Zoysia did not meet the quality standards of the project. Rather, he argues that rejection of his Meyer Zoysia was wrongful because (1) outside expert testimony showed that his sod was high quality, weed free, and healthy; (2) the Missouri Department of Agriculture inspected his sod and found no noxious weed contaminates; and (3) the superintendent of another golf course that purchased some of Cane Creek's Meyer Zoysia to resod some tee boxes was satisfied with that sod. But even with the benefit of all reasonable inferences to be drawn from these facts, Williams does not establish that Cane Creek provided goods conforming to the agreement—the agreement contemplated sod that would satisfy the quality standards of the Gary Player-designed golf course specifically, not the quality standards of golf courses more generally. Because Williams cannot show that Medalist wrongfully rejected the sod, Medalist was entitled to summary judgment on Williams's breach of contract claim.

## IV

Under Missouri law, a party must establish the following elements to prevail on its promissory estoppel claim: "(1) a promise; (2) promisee detrimentally relies on the promise; (3) promisor could reasonably foresee the precise action the promisee took in reliance; and (4) injustice can only be avoided by the enforcement of the promise." City of St. Joseph v. Sw. Bell Tel., 439 F.3d 468, 477 (8th Cir. 2006). "In Missouri, promissory estoppel is not a favorite of the law, and each element must clearly appear and be proven by the party seeking its enforcement." Clevenger v. Oliver Ins. Agency, Inc., 237 S.W.3d 588, 591 (Mo. banc 2007). Missouri courts apply the doctrine of promissory estoppel "with caution, sparingly and only in extreme cases to avoid unjust results." Midwest Energy, Inc. v. Orion Food Sys., Inc., 14 S.W.3d 154, 160 (Mo. Ct. App. 2000).

Ordinarily, "promissory estoppel serves as an equitable remedy where an express contract *does not* exist." Chesus v. Watts, 967 S.W.2d 97, 106 (Mo. Ct. App. 1998) (emphasis added). For the reasons stated above, we believe a reasonable jury could find that an enforceable requirements contract exists here, which would bar Williams from recovery under a theory of promissory estoppel. But even if a claim of promissory estoppel were available to Williams, this is not the extreme case that entitles Williams to the extraordinary remedy of promissory estoppel—Williams has not shown an "injustice" that resulted from Medalist's actions. As discussed above, Medalist did not violate any promise it made to Williams. Rather, its agreement to purchase was contingent on approval from Ozarks Golf, and it is undisputed that Ozarks Golf rejected Williams's sod.

## V

Accordingly, the judgment of the district court is affirmed.

_____