# United States Court of Appeals
## For the Eighth Circuit

_____

No. 21-1844
_____

Wanda Walker

*Plaintiff - Appellant*

v.

First Care Management Group, LLC

*Defendant - Appellee*

Gen3 Holdings, LLC, doing business as Parsons House on Eagle Run

*Defendant*

_____

No. 21-1846
_____

LaShonn Wright

*Plaintiff - Appellant*

v.

First Care Management Group, LLC

*Defendant - Appellee*

Gen3 Holdings, LLC, doing business as Parsons House on Eagle Run

*Defendant*

_____

Submitted: November 16, 2021
Filed: March 1, 2022
_____

Before BENTON, KELLY, and ERICKSON, Circuit Judges.
_____

ERICKSON, Circuit Judge.

Wanda Walker ("Walker") and LaShonn Wright ("Wright") claim First Care Management Group, LLC ("First Care") unlawfully terminated them from their positions at an assisted-living facility. They each commenced an action alleging state and federal claims for race discrimination and state claims for unlawful retaliation. The district court[1] granted summary judgment in favor of First Care on all claims. Walker and Wright appeal and we affirm.

## I.     BACKGROUND

Walker and Wright were employed at Parsons House on Eagle Run ("Parsons House") in Omaha, Nebraska. Walker, beginning in 2015 until her termination in 2017, worked as a caregiver throughout the facility on the 3:00 p.m. to 11:00 p.m. shift. In 2017, Walker worked primarily in the memory care unit. Walker's position required her to assist the residents with daily-living activities and to monitor the residents to make sure they did not hurt themselves or others. Wright began working at the facility as a certified nurse/medication aide in 2003 or 2004 and was promoted to lead medication aide in 2005. Her job duties included administering daily

_____

[1]The Honorable Robert F. Rossiter, Jr., then United States District Judge for the District of Nebraska, now Chief Judge for the District of Nebraska.

medication, monitoring residents, scheduling medication aides, and overseeing medication documentation. Like Walker, Wright worked in the memory care unit.

First Care policy required employees working at Parsons House to report resident abuse by: (1) "immediately" reporting the incident to their supervisor; (2) completing an incident report; and (3) making a note in the resident's chart. Employees were informed that failure to comply with this policy could result in discipline, including termination. Walker and Wright, along with other employees, attended a meeting during which they received training on First Care's reporting policy as well as the steps they were required to take if they saw a resident abusing another.

While working at Parsons House, Wright observed B.P., a resident in the memory care unit who suffers from Lewy Body Dementia, sexually assaulting female residents in the unit four times and intervened to stop him each time. Walker observed B.P. sexually assault other residents at least twice and also acted to stop him. Walker and Wright assert they reported the assaults to a supervisor and recorded the incidents in an informal communication book, which was kept on the premises to inform other staff at shift change how the previous shift had gone. On at least one occasion, Walker and Wright each waited until the next day to report B.P.'s behavior. The delay and failure to document in the resident's chart violated First Care's policy requiring all employees to immediately report resident abuse to their supervisor, simultaneously complete an incident report, and note the incident in the resident's chart.

Acting on an anonymous complaint about B.P.'s conduct, the Nebraska Department of Health and Human Services ("DHHS") made an unannounced site visit to Parsons House on February 2, 2017. Investigators interviewed several staff, including Wright, two white employees, and three other black employees. Walker was not working at the time of the site visit. Wright reported to DHHS that she had observed B.P. engage in inappropriate actions with residents, that she had reported those incidents, and that she was led to believe management would "handle it."

On February 15, 2017, First Care held a staff meeting to discuss the DHHS site visit. Penny Bowden, the facility's executive director, confessed ignorance of B.P.'s conduct and informed staff that "[a]fter an investigation is over, there would be consequences and people will be disciplined." Wright and other staff confronted Bowden, asserting that Bowden could not plausibly claim ignorance because B.P.'s conduct had been reported to her and other members of management, but no action was ever undertaken to address the complaints.

On February 24, 2017, First Care terminated three black employees: Walker,[2] Wright, and Latunda Knowles, also a caregiver. Two other black employees and two white employees, who had also been interviewed during the site visit or who had confronted Bowden, were not terminated. Bowden informed Walker that she was fired because she "let a client be in harm's way." Wright claims Bowden told her that she was being let go "due to a family complaint." Bowden later testified that Walker and Wright were terminated because, as mandatory reporters, they had failed to immediately report observed abuse. First Care asserts it terminated Walker, Wright, and Knowles because they worked during the shifts when most of B.P.'s inappropriate behavior occurred.

Walker and Wright filed complaints against First Care and the assisted-living license holder of Parsons House with the Nebraska Equal Opportunity Commission ("NEOC"). After the NEOC issued its findings, Walker and Wright filed complaints in state court, asserting: (1) unlawful retaliation after engaging in protected activities, in violation of Neb. Rev. Stat. § 48-1114(1)(c);[3] (2) unlawful retaliation, in violation of Neb. Rev. Stat. § 71-445 (as raised through Neb. Rev. Stat. § 20-148); and (3) unlawful race discrimination, in violation of Neb. Rev. Stat. § 48-1101 et.

_____

[2]First Care decided to terminate Walker on February 24, 2017, but she was not notified until she returned from vacation on March 1, 2017.

[3]The complaints listed Neb. Rev. Stat. § 48-1114(3). In 2019, the Nebraska Legislature renumbered § 48-1114(3) to § 48-1114(1)(c), but the operative language remains the same. L.B. 217, § 1, 106th Leg., Reg. Sess. (Neb. 2019).

seq., Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et. seq., and 42 U.S.C. § 1981. Walker and Wright sought compensatory and punitive damages. The cases were removed to federal court and consolidated for purposes of discovery. First Care successfully moved for summary judgment on all claims.

Wright and Walker appeal the district court's grant of summary judgment on all claims except for those brought under Neb. Rev. Stat. §§ 71-445 and 20-148, which they abandoned below.

## II.  DISCUSSION

"We review a district court's grant of summary judgment *de novo*, viewing any facts in which there is a genuine dispute in a light most favorable to the nonmoving party." Kempf v. Hennepin Cnty., 987 F.3d 1192, 1195 (8th Cir. 2021). Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

### A.  Retaliation in Violation of § 48-1114(1)(c)

Under Nebraska law, an employer may not discriminate against an employee who "opposed any practice or refused to carry out" any unlawful action. Neb. Rev. Stat. § 48-1114(1)(c). To establish retaliation under § 48-1114(1)(c), the employee must show: (1) she engaged in protected conduct, (2) she was subjected to an adverse employment action, and (3) a causal connection exists between the protected conduct and the adverse action. Knapp v. Ruser, 901 N.W.2d 31, 48 (Neb. 2017). The practices opposed "must be unlawful practices of the employer . . . and not unlawful actions by individuals or coemployees." Baker-Heser v. State, 963 N.W.2d 59, 69 (Neb. 2021) (quoting Bonn v. City of Omaha, 814 N.W.2d 114, 121 (Neb. Ct. App. 2012)).

Walker contends her internal complaints of abuse constitute protected activity, while Wright claims both her DHHS interview and her confrontation of Bowden are protected activity. These activities—the report made to DHHS interviewers, internal complaints, and the confrontation of Bowden about her alleged ignorance—were not in opposition to any unlawful activity by First Care. Because they have failed to identify any demand by First Care to engage in an unlawful action, it follows that they have not established they engaged in protected activity, and thus their retaliation claims under Neb. Rev. Stat. § 48-1114(1)(c) fail as a matter of law. See McPherson v. City of Scottsbluff, 931 N.W.2d 451, 462 (Neb. 2019) (noting one of the elements for a prima face case of retaliation under § 48-1114 requires a showing that the plaintiff engaged in protected conduct).

## B.  Race Discrimination Claims

Walker and Wright assert race discrimination claims under 42 U.S.C. § 1981, Title VII, and Neb. Rev. Stat. § 48-1104(1). The analysis for each of these claims is identical. Beasley v. Warren Unilube, Inc., 933 F.3d 932, 936 n.2 (8th Cir. 2019) (noting same analysis applies to discrimination claims under Title VII and 42 U.S.C. § 1981); Edwards v. Hiland Roberts Dairy, Co., 860 F.3d 1121, 1124 n.3 (8th Cir. 2017) (applying same analysis for discrimination claims brought under Title VII and Nebraska state law). Where, as here, there is no direct evidence of discrimination, each plaintiff must show: (1) membership in a protected group; (2) she was qualified to perform the job; (3) she suffered an adverse employment action; and (4) circumstances sufficient to permit an inference of discrimination. Edwards, 860 F.3d at 1125. If this burden is met, the burden shifts to the employer to provide a nondiscriminatory reason for the discharge. Id. If the employer meets its burden, the plaintiff must demonstrate the employer's proffered nondiscriminatory reason was pretext for intentional discrimination. Beasley, 933 F.3d at 937. Walker and Wright's burden to show pretext merges with their ultimate burden of persuasion that they were the victims of intentional discrimination. Guimaraes v. SuperValu, Inc., 674 F.3d 962, 973 (8th Cir. 2012) (citing Torgerson v. City of Rochester, 643

F.3d 1031, 1046 (8th Cir. 2011) (en banc)).  Proof of pretext coupled with a strong prima facie case may create a triable question of fact.  Id.

We assume without deciding that Walker and Wright have established prima facie cases.  First Care brings forth a nondiscriminatory reason for the terminations: both employees worked in the memory care unit on the shift where most of B.P.'s inappropriate conduct took place.  Walker and Wright claim pretext.  To demonstrate pretext, a plaintiff may show disparate treatment of similarly situated employees by the employer.  Edwards, 860 F.3d at 1125-26.  At the pretext stage, the test for whether someone is similarly situated is rigorous, and the plaintiffs must establish comparators outside their "protected group were similarly situated in all relevant respects."  Johnson v. Securitas Sec. Servs. USA, Inc., 769 F.3d 605, 613 (8th Cir. 2014) (en banc) (citations and quotation marks omitted).  While Walker and Wright claim that white employees were not disciplined, they have only identified a white supervisor as a comparator.  Their failure to identify a similarly situated comparator is fatal to their claims.  See Rowles v. Curators of Univ. of Mo., 983 F.3d 345, 355 (8th Cir. 2020) (determining summary judgment was appropriate when the proffered comparators were not similarly situated in all relevant respects).

## C.    Excluded Evidence

Walker and Wright also appeal the district court's exclusion of the NEOC investigator notes and reports on hearsay grounds.  We need not resolve whether the hearsay issue could be cured at trial because Walker and Wright have not pointed to any fact or statement within the notes or reports that would change the outcome.  As to Walker and Wright's retaliation claims, we assumed as true their allegations of protected conduct and found they were insufficient as a matter of law.  Similarly, we found Walker and Wright's failure to identify a sufficiently similar comparator was fatal to their race discrimination claims.  Because they have not directed us to anything in the excluded notes or reports that would cure these substantive defects, Walker and Wright have failed to raise a genuine issue for trial.  Smith v. Kilgore,

926 F.3d 479, 485 (8th Cir. 2019) (affirming grant of summary judgment when there was no "sufficient dispute to require submission to the jury").

## III. CONCLUSION

We affirm the district court's grant of summary judgment.

_____