# United States Court of Appeals
## For the Eighth Circuit

_____

No. 19-1004
_____

Cedric E. Williams

*Plaintiff - Appellant*

v.

United Parcel Service, Inc.

*Defendant - Appellee*
_____

Appeal from United States District Court
for the Eastern District of Missouri - St. Louis
_____

Submitted: December 12, 2019
Filed: June 29, 2020
_____

Before ERICKSON, MELLOY, and KOBES, Circuit Judges.
_____

KOBES, Circuit Judge.

Following his demotion, Cedric Williams sued United Parcel Service, Inc. for retaliation and discrimination under 42 U.S.C. § 1981. The district court[1] granted summary judgment for UPS. We affirm.

---

[1] The Honorable Rodney W. Sippel, Chief Judge, United States District Court for the Eastern District of Missouri.

I.

Williams, an African-American, was a District Labor Manager at UPS from 2004 to 2013.[2] His job was to represent the company in grievance proceedings for union employees in Arkansas. He was responsible for helping UPS prepare for hearings, attending hearings, deciding which grievances to pay, identifying recurring violations, and providing reports to District President, Judy Henry.

Richard Gough became Williams's supervisor in 2010, and soon after noticed problems with his work. In January 2011, Gough determined Williams was not following basic UPS labor practices and told him to create a log to identify which grievances were recurring, how long they were pending, and how much UPS was paying to settle them. A series of emails over the next year show Gough's dissatisfaction with Williams's failure to address grievances, complete requested tasks, communicate with Henry, finish legal briefing on time, and update his grievance log. Gough told Williams he "need[ed] to see drastic improvement" and eventually sent him a list of concerns. App. 338. Gough later sent the list again, saying: "I have not received answers on most of the questions. If you think I am . . . [doing this for] my typing skills, you are sadly mistaken." App. 342–43.

After this exchange, Gough and his supervisor, Headley Chambers, decided it was time to put Williams on a Management Performance Improvement Plan (MPIP).

---

[2] Because of Williams's failure to comply with local rules, the district court held that he admitted the allegations in UPS's statement of undisputed material facts. *See* D. Ct. Dkt. 85 at 4 n.2 (noting Williams's "additional statements . . . [we]re unsupported by citations to the record in violation of Local Rule 7-4.01(E)"). Williams does not claim that the court erred in its application of the local rules, so we also treat UPS's statements as admitted for purposes of the record on appeal. *Hacker v. Barnhart*, 459 F.3d 934, 937 n.2 (8th Cir. 2006) (issue not discussed in brief is abandoned on appeal); *Nw. Bank & Tr. Co. v. First Ill. Nat'l. Bank*, 354 F.3d 721, 725 (8th Cir. 2003) ("[D]istrict courts . . . may adopt local rules reasonably designed to streamline the resolution of summary judgment motions." (citation omitted)).

Gough emailed Human Resources director Stan Roux and, on March 13, 2012, Roux provided Gough with the necessary paperwork. Gough and Roux met with Williams to discuss the MPIP a month later, identifying four deficiencies: (1) Williams was not regularly communicating with Gough and Henry; (2) his grievance logs were "continually out of date" and included "[o]ld discipline cases with no follow up"; (3) he was not adequately preparing his cases for hearings; and (4) he was not working with division managers and staff to prevent contract violations. App. 465. Gough "explained that these issues must be corrected . . . [and] that should [Williams] not meet the MPIP goals, discipline up to and including discharge will come." App. 466.

In the following months, Gough and Roux prepared multiple MPIP progress reports and held follow-up meetings with Williams. The progress reports and notes from these meetings indicate that Williams was still failing to perform his duties.

As a result, Gough and Chambers decided to demote Williams and, on January 30, 2013, emailed Roux that they were "ready to move on." App. 537. Roux then contacted Henry, and—although she considered terminating Williams—she eventually agreed that he should be demoted. Roux created a position for Williams in UPS's feeder group, and notified him of the decision. Williams's demotion did not decrease his salary, but he did lose incentive opportunities.

Williams filed suit alleging that UPS violated 42 U.S.C. § 1981. He claimed that UPS demoted him in retaliation for statements he had made about the company's treatment of African-American employees, and discriminated against him by demoting him and not demoting similarly situated white employees. UPS moved for summary judgment and the district court granted the motion. The court held that Williams's retaliation claim failed because he had not shown a causal link between any protected activity and his demotion. The discrimination claim failed because Williams was unable to identify "a similarly-similarly situated employee, who is not a member of a protected class, who was treated more favorably," or otherwise demonstrate pretext. D. Ct. Dkt. 85 at 19. Williams timely appeals.

## II.

"We review a district court's decision to grant summary judgment *de novo*." *Gibson v. Geithner*, 776 F.3d 536, 539 (8th Cir. 2015). Summary judgment is proper if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Although we view the evidence and draw all reasonable inferences in favor of the nonmoving party, we do not credit "[m]ere allegations, unsupported by specific facts or evidence." *Thomas v. Corwin*, 483 F.3d 516, 526–27 (8th Cir. 2007).

## A.

Williams first challenges the district court's judgment on his retaliation claim. We apply the "*McDonnell Douglas* analytical framework to a retaliation claim under [42 U.S.C.] § 1981." *Kim v. Nash Finch Co.*, 123 F.3d 1046, 1060 (8th Cir. 1997). Because there is no direct evidence of retaliation,[3] Williams's first hurdle is making a *prima facie* case. *Sayger v. Riceland Foods, Inc.*, 735 F.3d 1025, 1030 (8th Cir. 2013). To do so, he must show: "(1) protected activity, (2) subsequent adverse employment action, and (3) a causal relationship between the two." *Kim*, 123 F.3d

---

[3] Williams argues there is direct evidence of retaliation and discrimination, but the only examples he cites come from the affidavit of Susan Norwood, which is not part of the summary judgment record. In the district court, Williams moved to stay summary judgment and reopen discovery so he could submit the affidavit. But the court denied the motion, and he does not appeal that decision. Nor does he contest the court's denial of his subsequent motion for sanctions, which also implicated the affidavit. *Tovar v. Essentia Health*, 857 F.3d 771, 775 (8th Cir. 2017) ("[A]rguments not sufficiently developed in opening brief are deemed waived."). Without any support from the record, Williams's direct evidence arguments fail. *See Couch v. Am. Bottling Co.*, No. 18-3648, 2020 WL 1886448, at *2 n.2 (8th Cir. Apr. 16, 2020) (Where a party has failed to cite evidence from the record, "[w]e will not comb through [it] to build [a plaintiff's] direct-evidence argument for him.").

at 1060. A causal relationship exists where "the desire to retaliate was the but for cause of [the adverse action]." *Sayger*, 735 F.3d at 1032 (citation omitted).

Williams claims that UPS demoted him in retaliation for statements he made on two different occasions. First, in 2011, Williams was consulted about whether UPS should terminate an African-American employee who was known for filing grievances. He told management that they needed to be consistent, so if they decided to terminate the employee, they needed to "do it the right way" and treat similarly situated white employees the same. App. 213–214. Second, Williams identifies a deposition he gave on UPS's behalf in an employment discrimination case on March 14, 2012, where he testified about UPS's treatment of African-American employees.

Williams concedes that Gough and Chambers never knew about the 2011 statements or his 2012 deposition. He further admits that these two were responsible for bringing about the MPIP and making the initial decision to demote him. This severs any link between protected conduct and Gough or Chambers. *See Jackson v. United Parcel Service, Inc.*, 548 F.3d 1137, 1143 (8th Cir. 2008) ("[A] causal link does not exist" if decision makers were unaware of the protected activity.).

Williams argues that his claim nevertheless survives because Henry and Roux made the ultimate decision to demote him and that both knew about his 2011 statements and the 2012 deposition. Assuming without deciding that both were decision makers, this claim still has three problems. First, Henry's and Roux's involvement in the demotion occurred almost a year after the March 2012 deposition and two years after his 2011 statements. We have previously held that, without more, an "interval of more than two months is too long to support an inference of causation." *Trammel v. Simmons First Bank of Searcy*, 345 F.3d 611, 616 (8th Cir. 2003). Second, there is no evidence that anyone at UPS thought Williams's testimony on either occasion was harmful. After the deposition, UPS's counsel sent an email stating that "Williams did a good job deflecting [opposing counsel's] questions" and later noted that he "did not harm UPS's defenses in the case." App.

-5-

963, 966. Third, undisputed facts support a different explanation for Williams's demotion—that he was demoted because Gough and Chambers believed his job performance was deficient. This further undercuts any connection between Williams's demotion and his 2012 deposition or 2011 statements. *See Shirrell v. St. Francis Med. Ctr.*, 793 F.3d 881, 888 (8th Cir. 2015) (protected activity was not a but-for cause where the "uncontroverted evidence" showed plaintiff was fired for disciplinary reasons). Because Williams cannot link protected conduct with his demotion, his retaliation claim fails.

B.

Williams next argues that the district court erred in granting summary judgment on his race discrimination claim. The *McDonnell Douglas* framework also applies to this claim. Williams "must first establish a prima facie case of discrimination." *Torgerson v. City of Rochester*, 643 F.3d 1031, 1046 (8th Cir. 2011) (en banc). Then, UPS is required to articulate a legitimate, non-discriminatory reason for the demotion. *Id.* Finally, Williams shoulders "the ultimate burden . . . to produce evidence sufficient to create a genuine issue of material fact regarding whether [UPS's explanation is] . . . mere pretext for intentional discrimination." *Id.* (citation omitted).

Because we believe the third step is dispositive, and because UPS offered a non-discriminatory reason for the demotion, we presume that Williams has made a *prima facie* case and "move directly to the issue of pretext." *Wagner v. Gallup, Inc.*, 788 F.3d 877, 886 (8th Cir. 2012) (citation omitted).

There are multiple ways a plaintiff can show pretext. One is by demonstrating that the employer's stated reason for the termination is false. *Barber v. C1 Truck Driver Training, LLC*, 656 F.3d 782, 794 (8th Cir. 2011). Plaintiffs taking this path must show "*both* that the reason was false, *and* that discrimination was the real reason." *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 515 (1993) (emphasis in original). Another way is by presenting evidence that the employer "treated similarly-

situated employees in a disparate manner." *Lake v. Yellow Transp. Inc.*, 596 F.3d 871, 874 (8th Cir. 2010). "At the pretext stage, the test for whether someone is sufficiently similarly situated, as to be of use for comparison, is rigorous." *Johnson v. Securitas Sec. Servs. USA, Inc.*, 769 F.3d 605, 613 (8th Cir. 2014) (en banc). The comparator must be "similarly situated in all relevant respects." *Id.* (citation omitted).

Williams attempts both approaches. To demonstrate that UPS's explanation is false, he introduces the testimony of two coworkers and argues that the number of grievances and associated payments in his territory have not changed since he was demoted. However, his grievance and payment performance were only two of the reasons Gough and Chambers gave for his demotion. Also, after-the-fact evidence like this does little to call into question whether the decision makers here "honestly believed the asserted grounds at the time of the [demotion]." *Twymon v. Wells Fargo & Co.*, 462 F.3d 925, 935 (8th Cir. 2006). Finally, even if Williams could show that UPS's explanation for the demotion was false, his burden is higher than that—he must show that UPS's decision was motivated by racial discrimination. *St. Mary's Honor Ctr.*, 509 U.S. at 515. He has not done so.

Williams's claim that UPS treated similarly-situated employees differently also fails. Williams acknowledges from the outset that this argument is a longshot: as "the only Labor Manager operating under the Southern Conference contract," he states that he belonged to "a class of one." Williams Br. 26. Perhaps for this reason, he does not identify the other two District Labor Managers that Gough supervised as potential comparators. Instead, he lists two employees that succeeded him in the position: Don Lewick and Bret Holladay.

Though there may be some situations where a plaintiff's replacement can serve as a comparator, successors are often new to a role and thus require a period of acclimation. They also necessarily hold their position after the decision at issue, so disparate treatment at that point might result from an employer's desire to minimize turnover. Nor are Lewick and Holladay otherwise good candidates for comparison.

*See Johnson*, 769 F.3d at 613 (comparators must "have dealt with the same supervisor, have been subject to the same standards, and engaged in the same conduct without any mitigating or distinguishing circumstances." (citation omitted)). Lewick was a temporary replacement and handled Williams's territory for a matter of months before becoming ill. Holladay started in the position a year after Williams was demoted, was never supervised by Gough, and Henry left shortly after he was hired. Finally, the record does not show that either individual had similar performance issues to Williams.

Because Williams has not raised a genuine issue of material fact as to whether UPS's explanation for his demotion was pretext for discrimination, his claim fails.

III.

We affirm the judgment of the district court.

_____