# United States Court of Appeals
## For the Eighth Circuit

_____

No. 18-3743

_____

Amee Pribyl

*Plaintiff - Appellant*

v.

County of Wright; Wright County Sheriff's Department

*Defendants - Appellees*

_____

Appeal from United States District Court
for the District of Minnesota

_____

Submitted: February 12, 2020
Filed: July 13, 2020

_____

Before LOKEN, BENTON, and KELLY, Circuit Judges.

_____

KELLY, Circuit Judge.

Amee Pribyl brought a sex discrimination claim for a failure to promote against County of Wright and the Wright County Sheriff's Department under Title VII of the Civil Rights Act of 1964 and the Minnesota Human Rights Act (MHRA). She now

appeals the district court's[1] grant of summary judgment in favor of the County.[2]  We affirm.

## I.

Pribyl has worked for the Wright County Sheriff's Department since September 1996.  In 2014, she applied to be a sergeant in the Department's Court Services division.  At the time, she had a bachelor's degree, a master's degree, and over twenty years of law enforcement experience, including several years working in the Court Security division.  She did not receive the promotion.  Instead, Drew Scherber, who had an associate's degree and less law enforcement experience than Pribyl, was selected.

The sergeant selection process consisted of three parts.  Part one required all applicants to apply through NeoGov, a software program the County used to screen applicants.  The Department used the NeoGov application to determine whether an officer met the minimum qualifications required for the sergeant position.  These included an associate's degree in criminal justice or law enforcement; a full-time license from Minnesota Board of Peace Officer Standards and Training; a rank of 1st Grade Wright County Deputy; no criminal history; a firearms certification; and an ability to pass medical, physical, and psychological evaluations, as well as a background investigation.  The application also contained five supplemental questions asking the applicant to: (1) acknowledge they answered all questions in the form; (2) confirm they meet the minimum qualifications; (3) note their number of years as a licensed deputy; (4) provide their highest level of education obtained; and (5) indicate

_____

[1] The Honorable Judge Susan Richard Nelson, United States District Judge for the District of Minnesota.

[2] Pribyl does not appeal the district court's determination that the Sheriff's Department is not a legal entity that can be sued.

if they are eligible for Veteran's Preference. Although the NeoGov system assigned a score to each applicant, the County contends it used the score only as a pass/fail screening tool to determine whether an applicant met the minimum qualifications. Both Pribyl and Scherber met the minimum qualifications, with Pribyl receiving the highest NeoGov score at 86.96% and Scherber receiving the lowest at 52.17%.

Applicants who met the minimum qualifications moved on to the second part of the process: a panel interview. The panel consisted of Human Resources Representative Judy Brown, Chief Deputy Todd Hoffman, and Captain Dan Anselment. They evaluated each candidate's communication skills, thought processes, articulation, and overall presentation by asking the same set of initial questions to each candidate. The parties do not dispute that no gender-specific questions were asked. Each interview was scheduled for the same amount of time. Every panelist took notes during the candidate interviews.

All three panelists had concerns about Pribyl's interview. For instance, when asked, "In your own words, describe the mission of the Sheriff's Office. As a Sergeant, what would be your role in carrying out this mission and how would you work to improve it?" Pribyl recited the Department's mission statement. All the panelists made a note of this. In addition, when asked, "What barriers currently exist that prevent you from performing your job as effectively as you would like and what changes would you recommend to alleviate these barriers for you and other deputies?" Pribyl responded that it was difficult using the restroom because she needed to take off her duty belt, which the men did not always have to do. The panelists also made a note of this answer. According to later testimony, Anselment thought the answer suggested a lack of seriousness, Brown characterized it as "odd," and Hoffman believed it was unresponsive to the question. The panelists also noted that Pribyl's answers were generally "very short and to the point." Pribyl admitted that she was "very nervous" during the interview and tried "to be concise and not to ramble on."

After completing the interviews, the panel met to decide on the five finalists they would recommend to Sheriff Hagerty. Sheriff Hagerty did not provide the panelists with any guidance on what he was looking for in a Court Security sergeant. The panelists began by identifying their individual top five finalists. Pribyl did not make any panelist's individual top five list. Hoffman and Anselment included Scherber on their lists, but Brown did not. After discussion, the panel reached a consensus on the group's top five finalists and recommended those to Sheriff Hagerty. Scherber was a recommended finalist and Pribyl was not.

Part three consisted of Sheriff Hagerty's decision. After receiving the panel's list, Hagerty narrowed it to three finalists. He then discussed the finalists with his command staff, and selected Scherber for the promotion. Hagerty found Scherber to be a strong supervisor, trustworthy, independent, a good communicator, a consensus builder, and a person who could anticipate his informational needs. Although Hagerty believed he had the authority to consider additional candidates, he did not do so because he was satisfied with the quality of the five recommended finalists. Later, after Pribyl filed this lawsuit, Hagerty expressed in a deposition his belief that a woman would likely not return to work after taking leave to give birth. He based this belief on his prior experience working with female employees who had children and did not return to the Department. According to Pribyl, this testimony revealed Hagerty's underlying bias against hiring and promoting women.

The County moved for summary judgment, which the district court granted. This appeal followed.

## II.

We review de novo a grant of summary judgment. Torgerson v. City of Rochester, 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc). We view all facts in the light most favorable to the non-moving party. Putman v. Unity Health Sys., 348 F.3d

-4-

732, 733 (8th Cir. 2003). Title VII and MHRA sex discrimination claims are analyzed under the same framework and may be considered simultaneously. Bergstrom-Ek v. Best Oil Co., 153 F.3d 851, 857 (8th Cir. 1998).

Pribyl makes two arguments on appeal.[3] First, she argues that the district court erred by concluding there was no genuine issue of material fact as to whether the County's explanation for denying her the promotion was pretextual. Second, she contends that the district court erred by determining that the County was not liable under a cat's-paw theory.

A.

Because Pribyl lacks direct evidence of discrimination, the McDonnell Douglas burden-shifting framework applies. Griffith v. City of Des Moines, 387 F.3d 733, 736 (8th Cir. 2004); see also McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802–03 (1973). Under this framework, a plaintiff must first establish a prima facie case of discrimination. Id. Then, the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for its action. Id. If the defendant meets this burden, then the burden shifts back to the plaintiff to produce sufficient admissible evidence that creates a genuine issue of material fact regarding whether defendant's proffered nondiscriminatory justification is merely pretextual for intentional discrimination. Torgerson, 643 F.3d at 1046.

---

[3] Pribyl noted a third issue in her Statement of Issues: Whether the district court erred in concluding that she presented no direct evidence of discriminatory animus. However, Pribyl made no meaningful argument on this issue in her opening brief. Although she later developed this argument in her reply brief by relying on Hagerty's deposition statements, it came too late, and we deem it waived. See Ahlberg v. Chrysler Corp., 481 F.3d 630, 634 (8th Cir. 2007) (holding that "points not meaningfully argued in opening brief are waived").

The County conceded that Pribyl established a prima facie case so the only issue is whether Pribyl met her burden of showing that the County's proffered nondiscriminatory reason—that Pribyl did not interview well—is pretextual.[4] Pribyl contends she met her burden because (1) evidence shows she was objectively more qualified than Scherber, but the County ignored her objective qualifications and instead relied solely on the subjective panel interview to make its decision; and (2) the panelists' interview notes show that Hoffman lied about why he did not select Pribyl as a top candidate, ignored her interview answers, and held her to a higher standard.

Neither argument is persuasive. First, the County did not ignore Pribyl's qualifications or rely solely on a subjective criterion. It is undisputed that the County set forth objective minimum requirements in its NeoGov application and only the applicants who met those requirements were interviewed. As such, the County considered Pribyl's objective qualifications when it granted her an interview. Wingate v. Gage Cty. Sch. Dist., No. 34, 528 F.3d 1074, 1080 (8th Cir. 2008) (when an employment decision relies on both subjective and objective criteria, the use of subjective considerations does not give rise to an inference of discrimination).

Crucially, Pribyl does not argue that the NeoGov application was not objective. She instead contends a factual dispute exists concerning the extent to which the County considered the NeoGov application—that is, whether the NeoGov scores were used to rank members from most to least qualified or to determine solely whether a candidate met the minimum requirements. But this factual dispute is not material and thus does not preclude summary judgment. See Anderson v. Liberty Lobby, Inc. 477 U.S. 242,

---

[4] Although the County argues on appeal that it does not concede Pribyl has established a prima facie case of discrimination, it already made the concession at the summary judgment hearing when it stated, "We admit Plaintiff meets the prima facie case in this case, but we have asserted legitimate nondiscriminatory reasons for not promoting Plaintiff."

248 (1986) (defining material facts as "facts that might affect the outcome of the suit under the governing law"). Assuming Pribyl is correct that the NeoGov scores mattered for purposes other than determining whether a candidate met the minimum requirements—even though no evidence indicates that was the case—and Pribyl was the most objectively qualified candidate, the County is still entitled to compare candidates' interview performances when making its decision. See Tyler v. Univ. of Ark. Bd. of Trs., 628 F.3d 980, 988 (8th Cir. 2011). The panelists unanimously agreed Pribyl interviewed poorly compared to other candidates, despite her objective qualifications. See Cox v. First Nat'l Bank, 792 F.3d 936, 939 (8th Cir. 2015) (explaining that "it is the employer's role to identify those strengths that constitute the best qualified applicant" (cleaned up)).

Second, the interview notes do not indicate that Hoffman lied, ignored Pribyl's answers, or held her to a higher standard than other candidates. Pribyl alleges that the interview notes contradict Hoffman's testimony that she did not explain how her educational background made her a good sergeant, discuss what the mission statement meant to her, or provide context for her physical barrier answer. She points out that the interview notes show *no* candidate explained how their education would make them a good sergeant. And, Pribyl continues, the interview notes in fact show she addressed the mission statement and provided context for her physical barrier answer. According to Pribyl, a jury could rely on this evidence to conclude Hoffman treated Pribyl differently than he did Scherber or the other male candidates.

But again, none of these disputes is material. Assuming the interview notes show what Pribyl alleges, Pribyl presented no evidence that one of the reasons for Hoffman's actions was gender animus. See St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 519 (1993) ("It is not enough, in other words, to *dis* believe the employer; the fact-finder must *believe* the plaintiff's explanation of intentional discrimination."). Further, Pribyl does not argue the interview notes show that the other panelists'

negative impressions of her were pretextual, or that Hoffman is somehow responsible for their negative impressions. Nor does she point to any evidence of gender animus from the other panelists. Regardless of how well Pribyl perceived her own interview performance, it is the panelists' impressions that matter. Torgerson, 643 F.3d at 1050 ("[Plaintiffs'] own opinions that they should have received higher interview scores are simply irrelevant as it is the employer's perception that is relevant, not the applicants' subjective evaluation of their own relative performance." (cleaned up)).

B.

Pribyl next argues that a reasonable jury could find the County liable under a cat's-paw theory. "[C]at's-paw refers to a situation in which a biased subordinate, who lacks decisionmaking power, uses the formal decisionmaker as a dupe in a deliberate scheme to trigger a discriminatory employment action." Qamhiyah v. Iowa State Univ. of Sci. & Tech., 566 F.3d 733, 742 (8th Cir. 2009) (cleaned up). Under this theory, "an employer may be vicariously liable for an adverse employment action if one of its agents—other than the ultimate decision maker—is motivated by discriminatory animus and intentionally and proximately causes the action." Bennett v. Riceland Foods, Inc., 721 F.3d 546, 551 (8th Cir. 2013) (citation omitted).

Pribyl contends that the panelists' gender animus tainted their recommendations to Hagerty, and because Hagerty did not conduct his own investigation, gender was a factor in his decision to pick Scherber. She also argues that the County is liable under a cat's-paw theory based on Hagerty's gender animus as demonstrated by his deposition statements.

The district court did not err by concluding that Pribyl failed to raise a genuine issue of material fact as to her cat's-paw theory. Pribyl fails to point to any evidence showing the panel harbored gender animus. Indeed, as the district court noted, the

panel did not ask any gender-specific questions, and it was Pribyl who introduced a gender-based issue through her answer. Further, Hagerty's own gender animus cannot be the basis of a cat's-paw theory because he was the final decisionmaker. If Hagerty's own animus caused Pribyl to not be promoted, then that is direct evidence of sex discrimination—not cat's-paw liability. However, as discussed, Pribyl waived this argument.

For the foregoing reasons, we affirm.

_____