# United States Court of Appeals
## For the Eighth Circuit

_____

No. 21-2202
_____

Gregory King

*Plaintiff - Appellant*

v.

State of Minnesota, Guardian ad Litem Board

*Defendant - Appellee*
_____

Appeal from United States District Court
for the District of Minnesota
_____

Submitted: February 15, 2022
Filed: July 8, 2022
_____

Before LOKEN, COLLOTON, and SHEPHERD, Circuit Judges.
_____

SHEPHERD, Circuit Judge.

Appellant Gregory King, a black male who was 60 years old at the time his employment was terminated, brought race, sex, and age discrimination claims under Title VII, the Age Discrimination in Employment Act (ADEA), and the Minnesota Human Rights Act (MHRA) and a retaliation claim under the Minnesota Whistleblower Act (MWA) after the Minnesota Guardian ad Litem Board (GALB) terminated his employment following internal and external investigations into

allegations of his misconduct. The district court[1] granted GALB's motion for summary judgment, finding that King failed to demonstrate a prima facie case of discrimination or retaliation and, even if he had done so, he failed to demonstrate GALB's reasons for terminating his employment were pretextual. King appeals, and having jurisdiction under 28 U.S.C. § 1291, we affirm.

I.

GALB was established by the Minnesota Legislature in 2010 to administer a statewide guardian ad litem program. Prior to 2010, guardians ad litem were part of the state court system and were managed within the judicial district in which they were located. In 2002, King was hired as a Guardian ad Litem Coordinator for the Tenth Judicial District. After GALB's establishment in 2010, King became a GALB employee and his title changed to Guardian ad Litem Manager, though his duties remained substantially the same. As a Guardian ad Litem Manager, King's responsibilities included overseeing the recruitment and selection of guardians ad litem, directly supervising guardians ad litem and GALB staff, and overseeing Tenth Judicial District program operations.

On October 5, 2017, King sent his supervisor, GALB Program Administrator Kristen Trebil, a letter expressing concern that the number of open cases in some judicial districts was exaggerated as a result of those districts failing to appropriately close cases, leading those districts to receive outsized financial allocations. Trebil thanked King for bringing this issue to her attention, told him that she would look into the matter, and later changed the method for allocating funds.

Approximately one month later, in early November 2017, GALB held a three-day training at Mystic Lake Casino Hotel in Prior Lake, Minnesota. During

---

[1]The Honorable Nancy E. Brasel, United States District Judge for the District of Minnesota.

the training, a group of participants were discussing the "Me Too" movement,[2] and after King walked by the group, one participant commented words to the effect of, "It doesn't just happen in Hollywood," and indicated to the group that she was aware of a woman who was harassed by King. Another participant, who knew of an improper relationship that King had with a prospective guardian ad litem in 2006 and 2007, reported the comments to her supervisor. Eventually, the matter reached Trebil, who informed GALB Human Resources Manager Linda Potter. On November 20, 2017, Trebil and Potter notified King that he was being placed on paid administrative leave pending an investigation into allegations regarding his conduct.

From November to early December 2017, Trebil and Potter conducted a preliminary investigation into King's alleged misconduct, during which time Trebil managed the Tenth Judicial District GALB staff ordinarily managed by King. Pursuant to this investigation, Potter interviewed A.A.,[3] who was the prospective guardian ad litem that King allegedly had an improper relationship with in 2006 and 2007. A.A. confirmed that King had a relationship with her during that time, telling Potter that King had pursued a sexual relationship with her after offering to privately train her and hire her as a guardian ad litem. In the course of her interviews with GALB staff, Trebil discovered that King had engaged in another improper relationship with C.C., a former guardian ad litem who worked for GALB from 2010 to 2017 and reported to King. Further, while managing the Tenth Judicial District GALB staff, Trebil discovered deficiencies in King's performance as a Guardian ad

---

[2]"'Me Too' was first coined in 2006 by Tarana Burke, a Black female activist, as the name for a movement to help victims of sexual harassment and assault. #MeToo catapulted into the public's consciousness in October 2017" when The New York Times published an article "detailing decades of sexual harassment allegations against the Hollywood producer Harvey Weinstein." Elliott v. Donegan, 469 F. Supp. 3d 40, 51 (E.D.N.Y. 2020) (citation omitted).

[3]The parties agreed before the district court to anonymize the names of certain persons in their filings. For the sake of continuity, we adopt the pseudonymous initials utilized by the district court.

Litem Manager, including multiple issues with the Tenth Judicial District's fee collection practices that King supervised and the fact that King continued to use an outdated case management system despite being directed to use a different system, assigned guardians ad litem to criminal cases without the authority to do so, and provided false and misleading information to Trebil about his supervision of the Tenth Judicial District GALB staff and operations.

Based upon the findings of their preliminary investigation, Trebil and Potter hired an independent investigator, Michelle Soldo, to conduct a full investigation. Soldo is a licensed attorney and experienced investigator who has a non-exclusive contract with the State of Minnesota to provide investigative services to State agencies and entities. From early December 2017 to January 11, 2018, Soldo conducted the fact-finding portion of her investigation. Soldo conducted over 20 interviews, including an interview with King, who, by that time, had obtained legal counsel. In late February 2018, Soldo issued a 12-page Investigation Report, which included a 41-page attachment detailing her factual findings. Soldo confirmed the allegation that King had an improper sexual relationship with A.A. in 2006 and 2007 and found that King engaged in similar behavior with another woman, B.B., roughly a decade later, though this relationship was not sexual. Further, Soldo concluded that King had a relationship with C.C. that other GALB staff members perceived as improper due to King's preferential treatment of C.C. and found that the two had exchanged improper emails. In addition to these improper relationships, Soldo found that King made unsolicited remarks to GALB staff that they perceived as unprofessional or sexually charged, including referring to himself as "chocolate cake" and telling one employee that "[n]ot everyone gets a piece of the chocolate cake." R. Doc. 38-2, at 34. Soldo also found that "King told GALB staff he dated or was rumored to have dated and/or to have had an affair with a named Tenth Judicial District Judge, he dated a [guardian ad litem] volunteer, and he [wa]s rumored to be having an affair with a direct report [guardian ad litem]." R. Doc. 38-2, at 6. Soldo further concluded that, *inter alia*, King "knowingly and intentionally circumvented established State procedures"; "[d]eficiencies in [his] oversight of Tenth Judicial District fee collection practices substantially and

-4-

adversely impacted the GALB"; and King "knowingly provided false or misleading information to [Trebil] . . . and disregarded work directives he received." R. Doc. 38-2, at 6, 8.

Trebil reviewed Soldo's report and the cited exhibits and discussed Soldo's findings with Potter and GALB's legal counsel before deciding to terminate King. On March 6, 2018, Trebil gave King a Notice of Termination, which listed reasons for his termination consistent with Soldo's report. King subsequently administratively appealed his termination. After a two-day hearing where he was represented by counsel, called witnesses to testify on his behalf, and presented documents, the appeals panel determined that Trebil's decision to terminate King's employment was reasonable, despite its conclusion that King was not at fault for the issues with the Tenth Judicial District's fee collection practices. In December 2018, King filed a charge of discrimination with the United States Equal Employment Opportunity Commission (EEOC), alleging discrimination based on his race, sex, and age, but the EEOC closed King's file because it could not conclude from the information that he provided that GALB violated the relevant statutes.

After the EEOC issued a right to sue letter, King commenced this action, asserting seven claims against GALB. Counts 1 through 6 assert that GALB and its employees discriminated against King on the basis of his race, sex, and age, in violation of Title VII, the ADEA, and the MHRA. Count 7 asserts that GALB and its employees retaliated against him in violation of the MWA for notifying Trebil in his October 5, 2017 letter of his concern that some districts were not appropriately closing their cases. GALB moved for summary judgment on all counts, arguing that King failed to establish a prima facie case of discrimination because King was not meeting GALB's performance expectations and was not treated differently than other non-protected class GALB employees and, likewise, failed to establish a prima facie case of retaliation because he could not demonstrate a causal connection between his October 5, 2017 letter and his March 6, 2018 termination. The district court granted GALB's motion, concluding that King had failed to establish a prima facia case of discrimination or retaliation and, even if he had done so, GALB had

-5-

demonstrated a legitimate, nondiscriminatory, and nonretaliatory reason for firing him that was not pretextual.

## II.

King argues that the district court erred in granting GALB's motion for summary judgment on each of his seven claims. "We review the district court's grant of summary judgment de novo and view the facts in the light most favorable to [King], the non-moving party." Muldrow v. City of St. Louis, 30 F.4th 680, 687 (8th Cir. 2022). "Where there is no dispute of material fact and reasonable fact finders could not find in favor of the nonmoving party, summary judgment is appropriate." Lissick v. Andersen Corp., 996 F.3d 876, 882 (8th Cir. 2021) (citation omitted). King's race, sex, and age discrimination claims brought under Title VII, the ADEA, and the MHRA are analyzed under the same framework and, therefore, we may consider them simultaneously. See Pribyl v. Cnty. of Wright, 964 F.3d 793, 795 (8th Cir. 2020) ("Title VII and MHRA sex discrimination claims are analyzed under the same framework and may be considered simultaneously."); Aulick v. Skybridge Ams., Inc., 860 F.3d 613, 620 (8th Cir. 2017) ("Age discrimination claims brought under [the MHRA and the ADEA] are analyzed under the same evidentiary framework, so we discuss the claims together."); Fletcher v. St. Paul Pioneer Press, 589 N.W.2d 96, 101 (Minn. 1999) ("In construing the MHRA, we apply law developed in federal cases arising under Title VII . . . ." (citation omitted)).

King does not point us to any direct evidence of discrimination or retaliation; thus, the McDonnell Douglas[4] burden-shifting framework applies. Pribyl, 964 F.3d at 796 ("Because [plaintiff] lacks direct evidence of discrimination, the McDonnell Douglas burden-shifting framework applies."); Scarborough v. Federated Mut. Ins. Co., 996 F.3d 499, 505 (8th Cir. 2021) (stating same in retaliation context).

> Under this framework, a plaintiff must first establish a prima facie case of discrimination. Then, the burden shifts to the defendant to articulate

[4]McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973).

a legitimate, non-discriminatory reason for its action. If the defendant meets this burden, then the burden shifts back to the plaintiff to produce sufficient admissible evidence that creates a genuine issue of material fact regarding whether defendant's proffered nondiscriminatory justification is merely pretextual for intentional discrimination.

Pribyl, 964 F.3d at 796 (citations omitted). In the retaliation context, a plaintiff must first "establish a prima facie case of retaliation," and if he succeeds, "the burden shifts to the employer to articulate a legitimate, non-retaliatory reason for the action." Wood v. SatCom Mktg., LLC, 705 F.3d 823, 829 (8th Cir. 2013). "If the employer does so, the burden shifts back to the plaintiff to demonstrate that the stated reason is pretextual." Naguib v. Trimark Hotel Corp., 903 F.3d 806, 811 (8th Cir. 2018).

Assuming without deciding that King has established a prima facie case of race, sex, and age discrimination and retaliation, we turn to whether GALB has "articulate[d] a legitimate, nondiscriminatory reason for [King's] termination." See Canning v. Creighton Univ., 995 F.3d 603, 611 (8th Cir. 2021); see also Naguib, 903 F.3d at 811 ("If the plaintiff establishes a prima facie case, 'the burden shifts to the employer to articulate a legitimate, non-retaliatory reason for the action.'" (citation omitted)). We conclude that GALB has demonstrated a legitimate, nondiscriminatory and nonretaliatory reason for terminating King in March 2018: the internal and external investigations into King's alleged misconduct uncovered evidence that King had engaged in gross misconduct. See Richey v. City of Indep., 540 F.3d 779, 784 (8th Cir. 2008) ("[A]n employer's belief that the employee committed misconduct is a legitimate, non-discriminatory reason for adverse action."); Kempf v. Hennepin Cnty., 987 F.3d 1192, 1197 (8th Cir. 2021) (finding instances of misconduct supporting plaintiff's termination were "legitimate, non-retaliatory reasons sufficient to shift the burden back to [plaintiff] to demonstrate that the reasons given [were] pretextual").

Therefore, our analysis focuses on whether King has demonstrated that GALB's proffered reasons for terminating his employment were pretextual. King

argues that GALB's reasons for terminating his employment are pretextual "for numerous reasons" and lists eight of those reasons in his briefing to this Court: (1) his employment record demonstrated that he was an excellent worker; (2) the timing of his administrative leave—one month after his October 5, 2017 letter—is "extremely suspect"; (3) GALB shifted its reasons or provided reasons that have not been substantiated; (4) Soldo's investigation was a "sham investigation" that was biased against him; (5) the findings related to his relationships with A.A., B.B., and C.C. were unsubstantiated or false, there was no evidence that King referred to himself as "chocolate cake," and the Tenth Judicial District Judge stated she never had an inappropriate relationship with King; (6) "King did not attempt to assign lower-level [guardian ad litem] cases on criminal cases in violation of [GALB's] policy of not assigning [guardians ad litem] in criminal cases"; (7) "the evidence shows that any [fee] collection errors were not the result of King's conduct and he did not have any issues with collection practices"; and (8) the Ninth Judicial District's Guardian ad Litem Manager "stated that King did not violate the Memorandum of Understanding regarding collection of fees for [guardians ad litem] between the Ninth and Tenth [Judicial Districts]" and a Tenth Judicial District employee stated that King never refused to reimburse her for mileage expenses. Appellant Br. 53-56.

Beginning with King's retaliation claim, we note that "[a]n employee's attempt to prove pretext requires more substantial evidence than it takes to make a prima facie case because unlike evidence establishing a prima facie case, evidence of pretext and retaliation is viewed in light of the employer's justification." Scarborough, 996 F.3d at 506 (citation omitted). To prove pretext, King must "both discredit the asserted reason for the adverse action and show the circumstances permit drawing a reasonable inference that the real reason for the adverse action was retaliation." Id. (citation omitted). We need not address King's eight proffered reasons because, even assuming for the sake of argument that King discredited GALB's reasons for terminating his employment, he does not point to any evidence that would permit the inference that he was terminated *because of* the October 5, 2017 letter, and thus, each of King's arguments fail because they do not "permit

drawing a reasonable inference that the real reason for [his termination] was retaliation." See id. at 508 (citation omitted).

Moving to King's discrimination claims, we similarly note that proving pretext in this context "requires more substantial evidence than it takes to make a prima facie case" and "evidence of pretext and discrimination is viewed in light of the employer's justification." Phillips v. Mathews, 547 F.3d 905, 912-13 (8th Cir. 2008) (citation omitted). King points to the same eight reasons to support his pretextual discrimination argument as he did for his retaliation argument. King first argues that the reasons GALB gave for terminating his employment in its March 6, 2018 letter are pretextual because, in his 16 years of service, he "never had any major employment issues" and evidence demonstrated "that [he] was an excellent worker." Appellant Br. 53-54. However, "evidence of a strong employment history will not alone create a genuine issue of fact regarding pretext and discrimination." Main v. Ozark Health, Inc., 959 F.3d 319, 326 (8th Cir. 2020) (citation omitted). King next argues that the fact that he was placed on administrative leave only one month after sending his October 5, 2017 letter is "extremely suspect." Appellant Br. 54. We disagree. First, "proximity alone is insufficient to establish pretext." Gibson v. Geithner, 776 F.3d 536, 541 (8th Cir. 2015). Further, any inference of discrimination based on the temporal proximity between King's October 5, 2017 letter and Trebil's placing him on administrative leave on November 20, 2017, "is dubious" given that allegations of misconduct came to light in the intervening period. See Wierman v. Casey's Gen. Stores, 638 F.3d 984, 998 (8th Cir. 2011).

King also argues that GALB has "shifted the reasons" it offered for terminating King, Appellant Br. 54, but "[a] change in an employer's legitimate, nondiscriminatory reason for firing an employee is probative of pretext only if the discrepancy is 'substantial,'" and because King provides no explanation in his briefing to this Court as to how GALB has shifted its reasoning, we cannot determine whether that purported change is "substantial," see Johnson v. Securitas Sec. Servs. USA, Inc., 769 F.3d 605, 613 (8th Cir. 2014) (en banc) (citation omitted). As to King's argument that Soldo's investigation was a "sham investigation" and Soldo

was paid by GALB to make findings that were unfavorable to him, Appellant Br. 54, we conclude that King has failed to elaborate on this claim or substantiate these allegations with facts or evidence at any stage of this litigation, and thus, this argument cannot create an issue of fact regarding pretext and discrimination, see Thomas v. Corwin, 483 F.3d 516, 527 (8th Cir. 2007) ("Mere allegations, unsupported by specific facts or evidence beyond the nonmoving party's own conclusions, are insufficient to withstand a motion for summary judgment.").

King's remaining arguments essentially boil down to an assertion that GALB's stated reasons for terminating him are false, which is a recognized method of proving pretext. See Appellant Br. 54-56; Williams v. United Parcel Serv., Inc., 963 F.3d 803, 808 (8th Cir. 2020) (stating one way to show pretext "is by demonstrating that the employer's stated reason for the termination is false"); Phillips, 547 F.3d at 913 ("An employee may prove pretext by demonstrating that the employer's proffered reason has no basis in fact . . . ." (citation omitted)). "Plaintiffs taking this path must show '*both* that the reason was false, *and* that discrimination was the real reason.'" Williams, 963 F.3d at 808. Even if King could show that GALB's reasons for terminating him are false, he points to no evidence that demonstrates that his termination was motivated by discrimination on account of his race, sex, or age. See id.

Because King has not shown that GALB's reasons for terminating his employment were pretextual, the district court did not err in granting summary judgment to GALB on his race, sex, and age discrimination claims and his retaliation claim.

III.

For the foregoing reasons, we affirm the judgment of the district court.

_____

-10-